THE STATE OF OHIO, APPELLEE, *v.* SCOTT, APPELLANT.

[Cite as State v. Scott, 3 Ohio App. 2d 239.]

(No. 1645—Decided August 31, 1965.)

*Mr. Frank R. Bodor*, city solicitor, for appellee.
*Mr. Philip A. Morgante*, for appellant.

LYNCH, J. This is an appeal on questions of law from a conviction of defendant-appellant in the Newton Falls Municipal Court for operation of a motor vehicle while under the influence of alcohol as the result of an arrest on the Ohio Turnpike by a State Highway Patrolman.

Defendant-appellant's first assignment of error is that the state has failed to prove that the offense was committed within the territorial jurisdiction of the trial court.

The Newton Falls Municipal Court was created by Section

1901.01, Revised Code, of the Uniform Municipal Court Act, and its territorial jurisdiction as provided by Section 1901.02, Revised Code, in addition to the corporate limits of Newton Falls, includes Bristol, Bloomfield, Lordstown, Newton, Braceville, Southington, Farmington and Mesoptamia Townships in Trumbull County.

Section 1901.20, Revised Code, provides, in part, as follows:

"The Municipal Court has jurisdiction of the violation of any ordinance of any municipal corporation within its territory and of any misdemeanor committed within the limits of its territory. * * *."

Section 2938.10, Revised Code, provides, in part, as follows:

"The state or municipality in all cases must prove the offense committed within the territorial jurisdiction of the court * * *."

The pertinent testimony as to the location of this traffic violation is as follows:

Mr. Lloyd Wiseman, a serviceman of Passarelli Brothers, who works on service breakdowns on the Ohio Turnpike, first saw defendant parked at the Niles-Youngstown interchange. Mr. Wiseman was going to Milepost 209, which he later indicated was the Warren Interchange. Mr. Wiseman radioed the State Patrol from the Niles-Youngstown Interchange as to defendant's condition. Mr. Wiseman followed defendant's car for about seven miles until about Milepost 212, when the State Patrolman passed him. The State Patrolman followed defendant's car for about three miles and ordered defendant's car to stop. Mr. Wiseman then passed them and went to the Warren interchange.

State Patrolman Thomas G. Summer testified that while on duty on the Ohio Turnpike he received a radio report on defendant, and he first observed defendant driving his car westbound on the Ohio Turnpike at approximately Milepost 212 on the Ohio Turnpike. He followed him approximately three miles and then ordered him to stop and arrested him. He then took defendant to the Newton Falls Police Department.

At the conclusion of the case, the attorney for defendant-appellant moved for a directed verdict and for dismissal of the case on the ground that the state failed to prove jurisdiction.

The court overruled this motion "for the reason it is my recollection that the Patrol Officer and this last witness, Mr. Wiseman, both or either of them have testified as to the milepost and the area of where the occurrences have happened, and I take judicial notice that the area in which this alleged offense is said to have occurred is within the territorial limits of this court, and in the County of Trumbull and State of Ohio."

Defendant-appellant contends that the record of the trial does not disclose sufficient evidence to warrant the determination that the offense committed by the defendant was committed within the territorial jurisdiction of the trial court, and cited as authority for his position the unreported case of *State* v. *Baker*, Trumbull County Common Pleas Case No. 71889, which has been the subject of considerable interest in this area. The *Baker case* was not appealed, and this is the first time that this issue has been presented in this court.

In the *Baker case* the arrest for driving while intoxicated was made by a State Highway Patrolman on the Ohio Turnpike, and the defendant was convicted in the County Court of Newton Falls, which preceded the present Municipal Court of Newton Falls. The defendant appealed to the Common Pleas Court of Trumbull County, which reversed the judgment of the Newton Falls County Court and discharged the defendant for several reasons, among which was that the state failed to prove that the offenses were committed within the territorial jurisdiction of the trial court. The only evidence in the record was that Baker was observed in the area of Milepost 210, and the Trumbull County Common Pleas Court held that the Newton Falls County Court could not take judicial notice as to the location of Milepost 210 on the Ohio Turnpike.

The issue thus presents itself as follows: May a trial judge take judicial notice of the existence of the Ohio Turnpike and an interchange of such Turnpike within the territorial jurisdiction of his court? If the Ohio Turnpike does pass through the territorial jurisdiction of his court, may a trial judge take judicial notice of the location of specific mileposts of the Ohio Turnpike for the purpose of determining whether such mileposts are within the territorial jurisdiction of his court?

A research of the law applicable to this case was made but no reported Ohio case on the issue of judicial notice of the jur-

isdiction of a court as to an offense occurring on the Ohio Turnpike was found. None of the briefs of the respective parties contained any reported Ohio cases.

15 Ohio Jurisprudence 2d 474, Criminal Law, Section 299, states:

"The general rule may be stated broadly that courts will take judicial notice of whatever is generally known or ought to be generally known within the limits of their jurisdiction, for the court is presumed to know what is of common knowledge. * * *"

Courts may take judicial notice of geographical facts which are matters of common knowledge, particularly those existing within the jurisdiction of the court. 21 Ohio Jurisprudence 2d 58, Evidence, Section 43; 31 Corpus Juris Secundum 935, Evidence, Section 32; 20 American Jurisprudence 74-75, Evidence, Section 50. 20 American Jurisprudence 76, Evidence, Section 50, states:

"The question whether a specific geographical fact is entitled to judicial notice is considerably simplified if such fact is the creature of statute; for in such case the court will take notice of the statute and incidentally the geographical fact, regardless of the notoriety of the latter."

It is generally held that a court will take judicial notice of the limits of its jurisdiction and the extent of the territory therein included. *Zimmerman* v. *Rockford Stone Co.*, 93 Ohio Law Abs. 47; 21 Ohio Jurisprudence 2d 70, Evidence, Section 57; 20 American Jurisprudence 103, Evidence, Section 85.

In *State* v. *Neff*, 104 Ohio App. 289, the court held that in a criminal case venue need not be proved in express terms but may be established by all the facts and circumstances in the case, and that the Findlay Municipal Court could take judicial notice that an intersection at a Main Street and a Front Street is located within the city of Findlay.

31 Corpus Juris Secundum 833-835, Evidence, Section 12, states:

"Since judicial cognizance may extend to matters beyond the actual knowledge of the judge, he may, in ascertaining facts to be judicially noticed, resort to, or obtain information from, any source of knowledge which he feels would be helpful to him, always seeking that which is most appropriate. * * *."

"The judge may inform himself as to the facts of geography, such as the navigable character of a river, the distance between two points, or the location of a given place within the jurisdiction, by resort to * * * public documents, maps, etc."

See *Zimmerman* v. *Rockford Stone Co.*, 93 Ohio Law Abs. 47.

In *Wainwright, Admr.*, v. *Lake Shore & Michigan Southern Ry. Co.*, 11 O. C. D. 530, the court took judicial notice of a map of a city in order to determine the distance between certain points on a railroad track within its limits.

The Ohio Turnpike was created under authority of Chapter 5537 of the Revised Code, and has been in existence for over ten years. It is a distinctive geographical feature, and it appears on all official highway maps, whether issued by the State of Ohio or County Engineers. It certainly has become a matter of common knowledge, and we hold that a court may take judicial notice whether the Ohio Turnpike passes through the territorial jurisdiction of the court.

One of the features of the Ohio Turnpike is interchanges. These are at fixed geographical locations, and their locations appear on all official maps. These interchanges are a matter of common knowledge, and we hold that a court may take judicial notice whether a specific interchange is located within the territorial jurisdiction of the court.

In this case, the evidence showed that the Warren interchange was Milepost 209, and that defendant was first observed at Milepost 212 driving west towards Milepost 209, and that the State Highway Patrolman followed defendant approximately three miles and then arrested him. By deduction, the arrest of defendant had to be in the vicinity of the Warren interchange. The trial judge may take judicial notice of whether the Warren interchange is within the territorial jurisdiction of the Newton Falls Municipal Court. Since the trial court took judicial notice that this offense occurred within the territorial jurisdiction of the Newton Falls Municipal Court, this court must presume that the vicinity of the Warren interchange is within the jurisdiction of his court. If this is not true, the defendant could produce evidence to dispute this fact.

For purposes of designating distances or locations, the Ohio Turnpike uses mileposts as reference points. For those

who have use of the Ohio Turnpike, it is a practical and accurate system of identifying a specific location. General maps do not designate the mileposts, but the Ohio Turnpike Commission has a pamphlet for general distribution showing the milepost numbers of each interchange, and they also have a chart of the mileposts on the Ohio Turnpike showing, among other things, the location of the county lines, disabled vehicle service zones, ambulance service zones, fire department service zones, etc. This chart is available to all who have need of such information.

Thus, a particular milepost designation on the Ohio Turnpike can be readily and accurately ascertained by checking this chart of the Ohio Turnpike Commission. For this reason we hold that a court may take judicial notice whether a particular milepost is within the territorial jurisdiction of its court.

We, therefore, hold that there was sufficient evidence in this case to warrant the trial court to determine that the offense committed by defendant was committed within the territorial jurisdiction of the Newton Falls Municipal Court.

Defendant-appellant's second assignment of error is that the state failed to identify the defendant. This contention is based on the fact that at no time during the trial was any of the witnesses for the state specifically asked if the person in the courtroom was the same William R. Scott who was charged by the State Highway Patrol for driving while intoxicated.

The general rule is that to warrant conviction the evidence must establish beyond a reasonable doubt the identity of the accused as the person who committed the crime. 23 Corpus Juris Secundum 643, Criminal Law, Section 920; 1 Wharton's Criminal Evidence, Twelfth Edition, 46; 1 Underhill's Criminal Evidence, Fifth Edition, 243. 23 Corpus Juris Secundum 645, Criminal Law, Section 920, states:

"The probative value of an identification depends on the circumstances under which it was made. * * *

"* * * It is not necessary that the identification be made positively by a witness, * * *. Lack of positiveness does not destroy the value of the identification, but goes to the weight of the testimony. * * *

"* * *

"Identity may be established by direct evidence, but direct evidence of identification is not required; circumstantial evi-

dence may be sufficient to establish the identity of accused as the person who committed the crime, * * *. The circumstances proved must, however, lead to but one fair and reasonable conclusion pointing to accused to the exclusion of all others as the guilty person and exclude every other reasonable hypothesis except that of accused's guilt. * * *."

In this case, the State Highway Patrolman testified that he came in contact with defendant, William Scott, on September 17, 1964, and eventually arrested him. His testimony thereafter referred to the accused as "defendant." However, he testified that the person he arrested wore eyeglasses, and that he thought that the defendant in the courtroom was wearing the same glasses that he had on the night of the arrest.

When Mr. Wiseman testified, he was asked the following question:

"Q. On September 17, 1964, did you have occasion to come in contact with the defendant here, William Scott? * * * A. Yes, I did."

His testimony thereafter referred to the accused as "defendant."

We hold that there was sufficient evidence of probative value to identify the defendant as the same person who was arrested, beyond a reasonable doubt.

Defendant-appellant's third assignment of error is that the judgment is against the manifest weight of the evidence and is contrary to law. A review of the transcript and bill of exceptions reveals that there was ample evidence to sustain the conviction.

*Judgment affirmed.*

JOHNSON, P. J., and JONES, J., concur.