This timely appeal arises from a jury verdict finding Appellant, Rojack Matyas, guilty of criminal damaging or endangering in violation of Wintersville, Ohio, Ordinance 541.049(a)(1). For the following reasons, we affirm the judgment of the trial court.
On August 26, 1997, at approximately 11:10 p.m., Kelly and Raymond Benzo were in their apartment at the Williamstown Apartments in Wintersville, Ohio when they heard glass break outside their bedroom window. Raymond Benzo looked outside and observed a male wearing a dark shirt with white lettering or symbols across the back run south between the carports of the apartments.
Patrolman Pinacchio of the Wintersville Police Department arrived and began to search the area. Pinacchio heard a vehicle traveling at a high rate of speed nearby and then observed it traveling east on a nearby road. Pinacchio followed the vehicle in his patrol car and advised other officers of the vehicle's direction. The vehicle stopped when Captain Nottingham of the Wintersville Police Department, who was directly behind the vehicle, activated his overhead lights.
Appellant was driving the vehicle and Joseph Irizarry, a juvenile at the time, was a passenger. Police transported Appellant and Irizarry to the Williamstown Apartments where it was discovered that the front passenger window of a car owned by Carrie and Richard West was broken. Police asked Richard and Kelly Benzo if they could identify either Appellant or Irizarry as the individual who had fled the apartments. Kelly Benzo stated that with the exception of him not wearing a black bandana, Appellant looked like an individual she had seen in the parking lot acting suspiciously about one-half hour before the incident. Richard Benzo was not able to positively identify Appellant but recognized that Appellant's shirt was similar to that worn by the individual he saw run from the parking lot. Police conducted a search of the area for a black bandana but did not find one.
Appellant was arrested and charged with criminal damaging or endangering and contributing to the delinquency of a minor. Appellant pled no contest to the charge of contributing to the delinquency of a minor in Wintersville Mayor's Court and was found guilty. Upon Appellant's request the remaining charge was transferred to Jefferson County Court District II where he pled not guilty and requested a jury trial. Trial was held on January 22, 1998. Following the presentation of evidence, the jury retired for deliberation. When the jury returned, the following transpired:
"THE COURT: Ladies and Gentlemen of the Jury, have you concluded your deliberations? Who's the foreperson? Have you concluded your deliberations?
"FORELADY: We have.
"THE COURT: Okay. Have you executed the verdict form?
"FORELADY: Yes.
"THE COURT: Okay. Bailiff, can — I'll tell you what. I'll have you read the verdict form.
"FORELADY: Should I stand —
"THE COURT: You can stand if you like.
"FORELADY: — or sit. We, the Jury, find the Defendant Rojack Matyas not guilty of criminal damaging or endangering.
"THE COURT: Is that a unanimous decision?
(Inaudible)
"THE COURT: Okay. Please hand it to the bailiff. Okay. The Defendant having been found not guilty of the charge of criminal damaging or endangering the Defendant is now discharged.
"[Prosecutor] MR. BECKER: Wait a minute.
"THE DEFENDANT: Thank you.
"MR. BECKER: Excuse me? I'd ask the Jury be polled.
"JUROR: Your question on was it a unanimous decision, we couldn't come to a unanimous decision. We questioned before we filled our names on that paper —
"MR. BECKER: I'd ask —
"THE COURT: You may poll the Jury."
(Tr. pp. 169-170).
The jury poll revealed that six jurors voted to find Appellant guilty of the crime, while two voted not guilty. (Tr. p. 171). When it was discovered that the jury's decision was not unanimous, the trial court stated that, "I'm going to have the Jury retire for further deliberations. Okay. And if at that point they're not able to — reach a unanimous verdict, then we will reconvene and see where we're going from that." (Tr. p. 171).
Appellant's counsel interjected, "(Inaudible) off the record? I think the verdict was accepted and he was discharged before he even asked for [the jury] to be polled." (Tr. p. 171). The prosecutor responded, "I don't think he was discharged. I asked for [the jury] to be polled. One of the jurors was questioning the verdict. If their verdict is not unanimous, it's not accept — the Court didn't accept it." (Tr. p. 171).
After further discussion, the prosecutor asked the trial court if it wished to instruct the jury regarding its further deliberations. (Tr. p. 172). Appellant's counsel then provided the trial court with instructions pursuant to State v. Howard (1989), 42 Ohio St.3d 18, which the court read to the jurors. (Tr. pp. 172-175). The jury retired for further deliberations and returned to open court with a unanimous guilty verdict. (Tr. p. 176).
The trial court sentenced Appellant to ten days incarceration and to pay restitution in the amount of $300.00. (Tr. pp. 179-182). The trial court released Appellant on his own recognizance pending appeal. (Tr. p. 182).
Appellant filed his notice of appeal with the trial court on February 17, 1998. His notice was filed with the clerk for this Court on February 23, 1998.
Appellant's first assignment of error alleges:
 "THE TRIAL COURT ERRED WHEN IT ACCEPTED THE JURY'S SECOND VERDICT. Tr., 176."
Within this assignment, Appellant advances this issue:
"A CRIMINAL CONVICTION, TO BE CONSTITUTIONALLY FIRM MUST BE SUPPORTED BY SUFFICIENT EVIDENCE."
Appellant argues that the State of Ohio failed to present sufficient evidence of his identity as the perpetrator of the crime. Appellant states that he made no incriminating statement to police and that the testimony of Joseph Irizarry absolved him of all blame. (Tr. pp. 78-81). Appellant also contends that the State presented no forensic or physical evidence linking Appellant to the commission of the crime. (Tr. p. 127).
Appellant also challenges testimony tending to identify him as the perpetrator. Appellant notes that Kelly Benzo testified that Appellant "looked like the person" she saw in the parking lot about one-half hour before the crime occurred. (Tr. pp. 19, 138). Appellant points out that Kelly Benzo testified that the individual she saw in the parking lot was wearing a bandana, but that Appellant was not wearing one when he was arrested. (Tr. pp. 35, 136). Appellant also states that Kelly Benzo did not notice if the individual had any tattoos. Appellant has very visible tattoos. (Tr. pp. 36-37).
Appellant also questions the testimony of Raymond Benzo. Appellant notes that Raymond Benzo saw only the back, not the face, of the individual fleeing the parking lot and that he was not sure of that person's sex. (Tr. pp. 55-57). Appellant also asserts that Raymond Benzo saw printing on the back of the subject's shirt, but that he could not read what the printing said. (Tr. p. 57). Appellant stresses that Raymond Benzo also failed to identify the individual in the parking lot as having tattoos and points out that he was not wearing a bandana when stopped. (Tr. pp. 58-59). Finally, Appellant asserts that Raymond Benzo could not identify Appellant as the individual who broke the car window. (Tr. p. 61).
Appellant states that when considering the evidence in a light most favorable to the prosecution, the only conclusion that can be drawn is that Appellant was in the vicinity of the crime approximately forty minutes prior to the occurrence. That, according to Appellant, is insufficient to prove the identity of the perpetrator beyond a reasonable doubt.
Based on the record presented here, this assignment of error lacks merit. It should first be noted that at trial, Appellant never challenged the sufficiency of evidence with respect to any element of the crime. A motion for acquittal pursuant to Crim.R. 29(A) following the closing of the state's case tests the sufficiency of the evidence. State v. Miley
(1996), 114 Ohio App.3d 738, 742. "The general rule is that, `an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court.'" State v. Awan (1986),22 Ohio St.3d 120, 122, quoting State v. Childs (1968), 14 Ohio St.2d 56, paragraph three of the syllabus.
Under Crim.R. 52(B), a reviewing court may recognize, "[p]lain errors or defects involving substantial rights * * * although they were not brought to the attention of the court." However, this rule may be invoked only in rare cases as an alleged error, "* * * does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Long
(1978), 53 Ohio St.2d 91, paragraph two of the syllabus.
In the present matter, had Appellant properly raised a Crim.R. 29(A) motion for acquittal following the state's case, the outcome of the trial would not have been different. "* * * [A]n appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." Statev. Jenks (1991), 61 Ohio St.3d 259, 273. "The verdict will not be disturbed unless the appellate court finds that reasonable minds could not reach the conclusion reached by the trier of facts." Id. "* * * [T]he relevant inquiry does not involve how the appellate court might interpret the evidence. Rather, the inquiry is, after viewing the evidence in the light most favorable to the prosecution, whether any reasonable trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt. Id.
"It is an axiom of law that, to warrant a conviction, the evidence must establish beyond a reasonable doubt the identity of the accused as the person who committed the crime." State v. Gorgan (Jan. 10, 1990), Medina App. No. 1824, unreported, *1, citing State v. Scott (1965),3 Ohio App.2d 239, 244. Identity may be established by direct or circumstantial evidence. State v. Gorgan, *1, citing State v. Scott, 244-45. It is not necessary that the identification be made positively by a witness, as lack of positiveness does not destroy the value of the identification, but goes to the weight of the testimony. State v.Gorgan, *1, citing State v. Scott, 244. "Circumstantial evidence and direct evidence inherently possess the same probative value. In some instances certain facts can only be established by circumstantial evidence." State v. Jenks, supra, 272.
Here, the evidence which established Appellant as the person who committed the crime was circumstantial. However, viewing that evidence in a light most favorable to the prosecution, a reasonable trier of fact could have found that Appellant committed the crime. Two witnesses testified that a subject each had observed in the area of the crime was wearing a shirt similar to that worn by Appellant at the time of his arrest. (Tr. pp. 21, 35, 54). One witness identified Appellant at the scene following his arrest, as well as at trial, as an individual seen lurking between cars in the parking lot prior to the car being damaged. (Tr. pp. 25, 26). Moreover, Officer Pinacchio observed a vehicle traveling at a high rate of speed from the direction toward which Raymond Benzo stated that he saw the suspect flee. (Tr. pp. 93-94). When police stopped that car, Appellant was driving it. (Tr. 94-96).
In light of the testimony at trial, there was sufficient evidence to support that it was Appellant who committed the crime. Accordingly, we overrule Appellant's first assignment of error.
Appellant's second assignment of error alleges:
 "THE TRIAL COURT ERRED WHEN IT DID NOT DISCHARGE MR. MATYAS AS IT PREVIOUSLY ORDERED. TR., 169."
Appellant presents three issues for review under his second assignment of error. His first issue states:
 "IN THE STATE OF OHIO A TRIAL COURT CAN NOT PERMIT FURTHER DELIBERATIONS AFTER THE COURT ACCEPTED THE VERDICT AND ORDERED THE ACCUSED DISCHARGED."
Appellant argues that since the trial court read the jury's verdict of not-guilty in open court, the court had no authority to order the jury to resume deliberations. Appellant asserts that once read in open court, a jury's verdict is accepted and may not be altered by the court. For support, Appellant cites Sargent v. State (1842), 11 Ohio 472, 473.
Appellant's argument lacks merit. Appellant relies almost entirely onSargent v. State. However, reading the portions of that case which Appellant cites, it is clear that this case does not support his position. The court stated in Sargent:
 "After the verdict has been received, and the jury discharged, whether it may have been received by a single judge, or in open Court, the control of the jury, and of the Court over such verdict is at an end. The Court can not alter or amend it."
 Id., 473. Sargent is wholly inapplicable to the present matter, as the jury was not discharged in the present case. Moreover, Appellant assumes that a verdict is "received" if it is read in open court. This is contrary to established procedural rules which permit the polling of the jury subsequent to the reading of a verdict.
A trial court speaks only through its journal entries. State v. King
(1994), 70 Ohio St.3d 158, 162. Moreover, Crim.R. 32(C), designated at the time of Appellant's trial as Crim.R. 32(B), provides:
 "A judgment of conviction shall set forth the plea, the verdict or findings, and the sentence. If the defendant is found not guilty or for any other reason is entitled to be discharged, the court shall render judgment accordingly. The judge shall sign the judgment and the clerk shall enter it on the journal. A judgment is effective only when entered on the journal by the clerk."
As we can see from explicit language of this rule, Appellant was not discharged by a mere reading of the defective not-guilty verdict and thus, the trial court did not relinquish jurisdiction over the matter.
Appellant states as his second issue:
 "A TRIAL COURT IS WITHOUT AUTHORITY TO ORDER THAT A JURY BE POLLED ONCE THE COURT ACCEPTS THE JURY'S VERDICT AND DISCHARGES THE ACCUSED."
As with his immediately preceding issue, Appellant relies on his assumption that the erroneous not-guilty verdict was accepted once it was merely read in open court. Appellant argues that according to Crim.R. 31(D) and R.C. § 2945.77, a jury may be polled only before a verdict is accepted by the court. Appellant contends that the prosecutor's request for a poll of the jury was untimely as it was made subsequent to the acceptance of the not-guilty verdict. Accordingly, Appellant concludes that the trial court had no authority to poll the jury.
This argument lacks merit. As we earlier stated, a judgment is not effective until it is entered upon the journal. Crim.R. 32(C). Since the flawed not-guilty verdict had yet to be journalized, it had no effect upon the proceedings. The prosecutor's request for a poll of the jury was timely and the court had authority to conduct the poll.
Appellant states as his third issue for review:
 "A TRIAL COURT CAN NOT GIVE A HOWARD CHARGE AFTER THE JURY HAS BEEN POLLED."
Appellant argues that prior to retiring for further deliberations under instructions formulated pursuant to State v. Howard (1989),42 Ohio St.3d 18, a trial court is required to ascertain from the jury that they can reach an agreement within an additional period of time. Appellant argues that this is to avoid coercing a jury to reach a unanimous verdict when the jury would otherwise be deadlocked. Appellant cites State v. Johns (1989), 60 Ohio App.3d 88 for the proposition that when a jury is polled and the votes of the jurors known to the court, aHoward instruction coerces the jurors in the minority to change their votes. Based on a consideration of the relevant law and the facts of this case, this argument also lacks merit.
Appellant failed to object to the supplemental jury instructions and therefore has waived all but plain error. State v. Underwood (1983),3 Ohio St.3d 12, 13; Crim.R. 30(A). As noted earlier, an alleged error, "* * * does not constitute a plain error or defect under Crim.R. 52(B) unless, but for the error, the outcome of the trial clearly would have been otherwise." State v. Long, supra, paragraph two of the syllabus.
Appellant's argument here challenges the reading of the Howard charge based merely on the fact that it followed the polling of the jury pursuant to Crim.R. 31(D). This argument necessarily fails as Crim.R. 31(D) expressly provides in part that, "If upon the poll there is not unanimous concurrence, the jury may be directed to retire for further deliberations * * *." Since the rule expressly provides that the jury may continue deliberations following the poll, it follows that the reading of instructions for further deliberations is not in and of itself error.
However, Appellant also challenges the form of the instructions as coercive in nature for two reasons. First, because the trial court ordered the jury to deliberate without ascertaining whether further deliberations would be beneficial. Secondly, because the supplemental instructions were coercive as to the jurors who had voted in the minority.
With respect to coercion stemming from the failure to ascertain from the jury whether further deliberations would yield a unanimous verdict, we cannot say that the outcome of the trial would have been otherwise had the trial court awaited the jury's answer to this question, as Appellant claims it was required. Prior to the jury retiring for further deliberations, the trial court instructed:
 "It is customary for the Court to inquire if there is a possibility of reaching an agreement within a reasonable time. The Court will therefore submit this question to the forewoman with the instruction that the answer be either yes or no. Do not disclose any other information or indicate the status of your deliberations. I ask that you take into consideration this instruction and to retire and reconsider in light of the instruction that I have given you for a reasonable period of time."
(Tr. p. 175). The trial court's statement contains nothing coercive. In fact, it permits the jury to return to open court without having reached a verdict. Also, as in regard to Appellant's next issue, Ohio law provides that a valid Howard instruction rectifies any apparent coercive effect on the jurors.
In Appellant's last issue, he argues that the Howard instruction itself was coercive under the circumstances. However, the record reflects that trial court correctly instructed the jury.
In State v. Howard, supra, the Ohio Supreme Court discussed the use of jury instructions when returning the jury for further deliberations, and especially the concerns raised by the instruction promulgated in U.S. v.Allen (1896), 164 U.S. 492. The Howard court was particularly concerned that the Allen instruction advised jurors that a verdict must be reached, depriving either the state or the defendant of the possibility of a hung jury. State v. Howard, 21. The Howard court was also concerned that the Allen instruction advised only those jurors in the minority vote to reconsider their position in light of the fact that a majority of the jurors are persuaded to the opposite conclusion. Id.
Addressing those concerns, the Howard court adopted the following, less coercive instruction described as, "balanced and neutral":
 "The principal mode, provided by our Constitution and laws, for deciding questions of fact in criminal cases, is by jury verdict. In a large proportion of cases, absolute certainty cannot be attained or expected. Although the verdict must reflect the verdict of each individual juror and not mere acquiescence in the conclusion of your fellows, each question submitted to you should be examined with proper regard and deference to the opinions of others. You should consider it desirable that the case be decided. You are selected in the same manner, and from the same source, as any future jury would be. There is no reason to believe the case will ever be submitted to a jury more capable, impartial, or intelligent
than this one. Likewise, there is no reason to believe that more or clearer evidence will be produced by either side. It is your duty to decide the case, if you can conscientiously do so. You should listen to one another's arguments with a disposition to be persuaded. Do not hesitate to reexamine your views and change your position if you are convinced it is erroneous. If there is disagreement, all jurors should reexamine their positions, given that a unanimous verdict has not been reached. Jurors for acquittal should consider whether their doubt is reasonable, considering that it is not shared by others, equally honest, who have heard the same evidence, with the same desire to arrive at the truth, and under the same oath. Likewise, jurors for conviction should ask themselves whether they might not reasonably doubt the correctness of a judgment not concurred in by all other jurors."
Id., 24-25.
In the matter before us, the trial court's instruction to the jury was nearly verbatim from Howard, with no material changes. (Tr. 173-174). Therefore, Appellant cannot argue that the instruction itself was coercive or in and of itself the cause of error. Moreover, Appellant's reliance on State v. Johns, supra, is misplaced. In Johns, the Court of Appeals for Hamilton County addressed the supplemental instructions for further deliberations that had been given to a jury whose initial voting was known to the trial court. The Johns court stated:
 "We are convinced that, because the jury members knew the judge was aware of their ten-to-two alignment, his instruction to the jury that they had not reached an `effective verdict' and his return of the jury to its deliberations without any substantial reminder to the jury of its purpose to attempt to reach a verdict in good conscience presented an unbalanced and biased instruction that did, in fact, single out the minority members of the jury." (Emphasis added.)
 State v. Johns, 91.
It is clear that the Johns court based its decision on deficiencies in the supplemental instructions, deficiencies which were corrected in aHoward instruction. The Johns court focused on the fact that the jurors in the minority may have been coerced by unbalanced and biased instructions. The court also noted that the Johns supplemental instructions were void of any reminder that the jurors were to reach their verdict in "good conscience." Again, these deficiencies are cured by the Howard instruction explicitly approved by the Ohio Supreme Court.
We therefore conclude that all of Appellant's arguments under his second assignment of error also lacks merit and must be overruled. Accordingly, we affirm the judgment and conviction of the trial court.
Cox, P.J., dissents. Donofrio, J., concurs.