OPINION
{¶ 1} Defendant-appellant, Paul David Lawwill II, appeals his conviction in the Butler County Court of Common Pleas for engaging in a pattern of corrupt activity and conspiracy to commit aggravated murder. For the reasons outlined below, we affirm the decision of the trial court.
 {¶ 2} From about 2000 to 2003, appellant and Justin Bach were partners in a large scale operation involving the sale and transport of drugs from Phoenix, Arizona to *Page 2 
Middletown, Ohio. Appellant sent cash to Bach in Phoenix, and Bach used the cash to purchase cocaine which he sent back to appellant in Middletown. The cash and drugs were transported in a van driven by either Bill Slayton or Johnny Decker. The van contained a concealed compartment for storing the contraband.
 {¶ 3} In 2003, the operation incurred a loss of $240,000 when cash was confiscated by Oklahoma police who stopped the van while en route to Phoenix from Middletown. The police immediately located the cash in the van's secret compartment. Due to the ease with which the police found the money, Bach and appellant guessed that someone who knew them was working with the police. Their suspects included Slayton and Jeff Thomas, both of whom they decided to have killed. The plan to murder Slayton was aborted, however, after Bach and appellant realized he would soon be deceased due to health problems.
 {¶ 4} Bach hired Kevin Hubbard to murder Thomas for $40,000. In August 2003, Hubbard and Schawn Little persuaded Thomas to accompany them to Dayton, Ohio to ostensibly commit a robbery there. Once the trio reached Dayton, Hubbard shot Thomas in the back of the head and left his body in a remote, wooded area. Bach and appellant were highly agitated when they learned that Little was involved in the murder. They did not trust Little, and hired Hubbard to kill him. Hubbard never went through with Little's murder.
 {¶ 5} In November 2005, a grand jury returned a four-count indictment against appellant. The charges included one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1), and three counts of conspiracy to commit aggravated murder in violation of R.C. 2923.01(A)(1) (one count each for victim Thomas and intended victims Slayton and Little).
 {¶ 6} Following a jury trial, appellant was convicted on the charge of engaging in a pattern of corrupt activity and on one charge of conspiracy to commit aggravated murder (victim Thomas) and acquitted on the remaining charges. The trial court imposed a six-year *Page 3 
term on the engaging in a pattern of corrupt activity charge and a consecutive nine-year term on the conspiracy to commit aggravated murder charge, both to be served consecutive to appellant's previously imposed federal sentence. Appellant timely appeals, raising two assignments of error.
 {¶ 7} Assignment of Error No. 1:
 {¶ 8} "THE TRIAL COURT ERRED TO THE PREJUDICE OF DEFENDANT-APPELLANT WHEN IT REFUSED TO DISMISS THE CHARGES AGAINST HIM FOR LACK OF AN IN-COURT IDENTIFICATION OF LAWWILL."
 {¶ 9} Appellant argues that the trial court erred in overruling his Crim. R. 29 motion for acquittal because the state failed to prove his identity beyond a reasonable doubt. Appellant maintains that he was never identified in the courtroom by any witness as the perpetrator of the crimes of which he was convicted.
 {¶ 10} In reviewing the denial of a Crim. R. 29 motion for acquittal, this court has applied the same test as it would in reviewing a challenge based upon the sufficiency of the evidence to support a conviction. State v. Thomas, Warren App. No. CA2005-07-085,2006-Ohio-3901, ¶ 9. The relevant inquiry is whether, after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. State v. Hancock, 108 Ohio St.3d 57,2006-Ohio-160, ¶ 34.
 {¶ 11} It is well-settled that, in order to warrant a conviction, the evidence must establish beyond a reasonable doubt the identity of the accused as the person who actually committed the crime. State v.Scott (1965), 3 Ohio App.2d 239, 244. However, there is no general requirement that the defendant must be visually identified in court by a witness. Id. Rather, direct or circumstantial evidence is sufficient to establish the identity of the accused as the person who committed the crime. State v. Irby, Mahoning App. No. 03 MA 54, 2004-Ohio-5929, *Page 4 
¶ 16-21.
 {¶ 12} Numerous courts, including this one, have recognized that circumstantial evidence may be sufficient to establish the identity of the accused. See, e.g., State v. McKnight, 107 Ohio St.3d 101,2005-Ohio-6046, ¶ 75; State v. Alvarez (1994), Butler App. No. CA92-12-240, at 7; State v. Brown, Franklin App. No. 07AP-244,2007-Ohio-6542, ¶ 19; State v. Kiley, Cuyahoga App. No. 86726, 86727,2006-Ohio-2469, ¶ 9; Scott at 244-45. "Circumstantial evidence" is "the proof of facts by direct evidence from which the trier of fact may infer or derive by reasoning other facts." State v. Wells, Warren App. No. CA2006-02-029, 2007-Ohio-1362, ¶ 11, citing State v. Griesheimer, Franklin App. No. 05AP1039, 2007-Ohio-837, ¶ 26.
 {¶ 13} The absence of appellant's in-court identification at trial did not warrant the granting of his Crim. R. 29 motion. In Scott, the defendant challenged his conviction for operation of a motor vehicle while under the influence of alcohol, arguing that no witness identified him in court as the perpetrator of the crime. The police officer who initiated the traffic stop was asked the following question at trial: "On September 17, 1964, did you have occasion to come in contact with the defendant here, William Scott?" The officer replied: "Yes, I did." The appellate court factored this testimony into its analysis and held that there was sufficient evidence to identify the defendant as the person who was arrested beyond a reasonable doubt. 3 Ohio App.2d at 245.
 {¶ 14} In the case at bar, Special Agent Peter Lakes of the Federal Bureau of Investigation testified for the state. On direct examination, Lakes was asked: "Mr. Lakes, in the course of your duties, did you have an occasion to be involved in interviews of this defendant here in thecourtroom today, Paul David Lawwill, the second on two dates of January 26th, 2004 and September 9th, 2005?" (Emphasis added.) Lakes' response to this question was: "Yes, sir, I was." This exchange was similar to that relied upon by the court in *Page 5 
the Scott case, though arguably more specific as the prosecutor in the present matter stated "this defendant here in the courtroom today."
(Emphasis added.) This exchange provided circumstantial evidence that appellant, who was the person seated in the courtroom at the time, was the perpetrator of the crimes with which he was charged.
 {¶ 15} The reasoning in State v. Irby, 2004-Ohio-5929, also lends support to the denial of appellant's Crim. R. 29 motion. InIrby, the defendant argued that his Crim. R. 29 motion was improperly denied because there was no in-court identification of him as the perpetrator of the domestic violence offense with which he was charged. The appellate court upheld the trial court's ruling based upon circumstantial evidence establishing the defendant's identity. This included testimony by the victim that she lived with the defendant for seven years, had two children with him, and recognized him by his voice and by looking at him when the assault occurred at a nightclub. The appellate court determined that there was no doubt that the victim was referring to the defendant and that she was in a position to know his identity. Id. at ¶ 22.
 {¶ 16} Justin Bach's testimony provided circumstantial evidence establishing appellant's identity as the perpetrator of the crimes with which he was charged. Bach testified that he and appellant had been friends ever since they started playing baseball together in the fifth or sixth grade. He also testified that he and appellant were partners in a substantial drug trafficking operation for approximately two to three years. Therefore, by virtue of his longstanding friendship and clandestine business relationship with appellant, Bach was in a position to know appellant's identity.
 {¶ 17} Finally, testimony referencing state's exhibit number one provided circumstantial evidence of appellant's identity. The exhibit consisted of a picture board displaying the photographs of eight people involved in the drug trafficking operation and/or the conspiracy to murder Thomas. Beneath each photograph was the name of the person in *Page 6 
the photograph. Appellant's name and corresponding photograph were on this picture board.
 {¶ 18} At trial, the prosecutor asked Bach the following question regarding state's exhibit number one: "Do the names underneath the photographs identify the people as you know them in the photographs?" Bach replied: "Yes, sir, they do." Moments later, the prosecutor reiterated: "And do those photographs truly and fairly accurately depict the people you know by those names?" Bach responded: "Yes, they do." Considering that appellant's name and photograph were on the picture board, this served as additional circumstantial evidence of appellant's identity.
 {¶ 19} We conclude that the trial court did not err in overruling appellant's Crim. R. 29 motion based upon the absence of an in-court identification of appellant as the perpetrator of the offenses.
 {¶ 20} Appellant's first assignment of error is overruled.
 {¶ 21} Assignment of Error No. 2:
 {¶ 22} "THERE WAS INSUFFICIENT EVIDENCE TO JUSTIFY A CONVICTION FOR ENGAGING IN A PATTERN OF CORRUPT ACTIVITY."
 {¶ 23} Appellant challenges the sufficiency of the evidence in support of his conviction for engaging in a pattern of corrupt activity. According to appellant, the three predicate acts upon which his conviction was based were so closely related to each other and connected in time and place as to constitute a single event.
 {¶ 24} The review of a claim that a conviction is not supported by sufficient evidence focuses upon whether, as a matter of law, the evidence presented at trial is legally sufficient to sustain a verdict.State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52. In addressing appellant's sufficiency claim, we employ the same standard as that stated under appellant's first assignment of error. That is, we inquire as to whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have *Page 7 
found the essential elements of the crime proven beyond a reasonable doubt. Hancock, 2006-Ohio-160 at ¶ 34. This test raises a question of law and does not allow the court to weigh the evidence. State v.Martin (1983), 20 Ohio App.3d 172, 175.
 {¶ 25} Appellant was convicted of engaging in a pattern of corrupt activity in violation of Ohio's Racketeer Influenced and Corrupt Organizations (RICO) statute, R.C. 2923.32(A)(1). By definition, a RICO charge involves a pattern of corrupt activity: "No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *." R.C. 2923.32(A)(1). Ohio's RICO statute defines a "pattern of corrupt activity" as:
 {¶ 26} "[T]wo or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event." R.C. 2923.31(E).
 {¶ 27} Therefore, a person must engage in separate incidents which demonstrate a continuing course of criminal conduct before the state may indict on a RICO charge. See, e.g., State v. Hicks, Butler App. No. CA2002-08-198, 2003-Ohio-7210, ¶ 32-35. Included within the ambit of "corrupt activity" are, inter alia, the offenses of money laundering and aggravated murder. R.C. 2923.31(I)(2)(a).
 {¶ 28} Of the predicate offenses listed in the amended indictment, [1] the jury specifically found that appellant participated in the following in rendering its guilty verdict on the RICO *Page 8 
charge: money laundering as to the use of approximately $240,000 from illegal activity; conspiring to engage in the aggravated murder of Thomas; and conspiring to engage in money laundering as to payment for the murder-for-hire of Thomas.
 {¶ 29} Appellant maintains that he participated only in making the decision to murder Thomas. This decision, emphasizes appellant, directly resulted from the confiscation of the $240,000. He insists that the payment for the murder was part of the same continuum of activity arising out of the confiscation of the funds from the van. In this manner, appellant reasons that all three predicate acts were so closely related as to constitute a single event. We disagree.
 {¶ 30} As stated, one of the predicate acts upon which appellant's RICO conviction was based involved money laundering as to the use of the $240,000 in proceeds from drug trafficking. R.C. 1315.55 criminalizes the following activities:
 {¶ 31} "(A)(1) No person shall conduct or attempt to conduct a transaction knowing that the property involved in the transaction is the proceeds of some form of unlawful activity with the purpose of committing or furthering the commission of corrupt activity.
 {¶ 32} "(2) No person shall conduct or attempt to conduct a transaction knowing that the property involved in the transaction is the proceeds of some form of unlawful activity with the intent to conceal or disguise the nature, location, source, ownership, or control of the property or the intent to avoid a transaction reporting requirement under section 1315.53 of the Revised Code or federal law.
 {¶ 33} "(3) No person shall conduct or attempt to conduct a transaction with the purpose to promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on of corrupt activity.
 {¶ 34} "(4) No person shall conduct or structure or attempt to conduct or structure a transaction that involves the proceeds of corrupt activity that is of a value greater than ten *Page 9 
thousand dollars if the person knows or has reasonable cause to know that the transaction involves the proceeds of corrupt activity.
 {¶ 35} "(5) No person shall conduct or attempt to conduct a transaction that involves what has been represented to the person by a law enforcement officer or another person at the direction of or with the approval of a law enforcement officer to be the proceeds of corrupt activity or property used to conduct or facilitate corrupt activity with the intent to promote, manage, establish, carry on, or facilitate promotion, management, establishment, or carrying on of corrupt activity, to conceal or disguise the nature, location, source, ownership, or control of the property believed to be the proceeds of corrupt activity, or to avoid a transaction reporting requirement under section 1315.53 of the Revised Code or federal law."
 {¶ 36} Bach's testimony was clear as to appellant's involvement in money laundering regarding the $240,000. Of this amount, $70,000 belonged to Bach and $170,000 belonged to appellant. Appellant was sending this sum to Bach in Arizona to enable Bach to purchase methamphetamine for him. Therefore, the evidence sufficiently shows that appellant was guilty of money laundering as contemplated by R.C. 1315.55
regarding the $240,000 in proceeds from drug trafficking.
 {¶ 37} Appellant's RICO conviction was also based upon the predicate act of conspiring to engage in money laundering as to payment for the murder-for-hire of Thomas. According to Bach, Hubbard received $5,000 prior to the murder and was to receive $35,000 upon its completion. Bach testified that, without his knowledge or authorization, Hubbard was paid the $35,000 balance for the murder before Bach was able to return to Middletown from Phoenix. Other than himself, Bach maintained that only appellant was authorized to order Bach's money handler to release the sum, which was paid out of Bach's money.
 {¶ 38} Furthermore, Bach's testimony establishes that the payment for the murder came from drug proceeds other than the $240,000. The $240,000 located by the police *Page 10 
during the Oklahoma van stop was confiscated. The confiscated funds could not have been used to pay Hubbard the $35,000. Therefore, the two sums had to involve separate illicit monies constituting two separate predicate acts of money laundering. This evidence sufficiently demonstrates that appellant was guilty of conspiring to engage in money laundering within the meaning of R.C. 1315.55 regarding the $35,000 hit money.
 {¶ 39} The final predicate act upon which appellant's RICO conviction was based involved conspiring to engage in the aggravated murder of Thomas. R.C. 2903.01 provides, in pertinent part, that "[n]o person shall purposely, and with prior calculation and design, cause the death of another * * *." R.C. 2903.01(A). The evidence adduced from Bach's testimony clearly established appellant's guilt as to this charge. Bach testified about the extensive discussions between himself and appellant regarding what action they wanted to take following the confiscation of the $240,000 from the van in Oklahoma. During these discussions, Bach and appellant expressed their mutual and vehement suspicion that Thomas may have informed the police about their van. Also, both were aware that Thomas was a competitor in the cocaine selling market.
 {¶ 40} Bach and appellant agreed to have Thomas killed and discussed proposed methods. Bach did not know Thomas, whereas appellant was acquainted with him. Appellant informed Bach that they may be able to use Thomas' intravenous drug use to accomplish the murder by giving him tainted cocaine. Bach subsequently made the arrangements for the murder, including hiring Hubbard. Bach did not share the details of the arrangements with appellant because he believed it would be better if he and appellant remained ignorant of the details of each other's activities. When the tainted cocaine did not kill Thomas, Bach ordered Hubbard to take Thomas to Dayton to execute the murder.
 {¶ 41} Despite appellant's ignorance of the logistics of the murder, the evidence shows that appellant was aware and approved of Bach going forward with the arrangements for the *Page 11 
murder. Special Agent Lakes' testimony confirms that appellant knew a number of the details about the murder. Appellant's ignorance of the arrangements made by Bach does not nullify his key role in initiating the murder conspiracy along with Bach. Therefore, the evidence sufficiently establishes that appellant was guilty of conspiring to engage in aggravated murder as defined by R.C. 2903.01(A) in participating in the murder plot.
 {¶ 42} While these three predicate acts, only two of which were required to support appellant's RICO conviction, were related to the same enterprise, each was distinct in time and place and each constituted a separate event. We conclude that appellant's conviction for engaging in a pattern of corrupt activity was supported by sufficient evidence.
 {¶ 43} Appellant's second assignment of error is overruled.
 {¶ 44} Judgment affirmed.
WALSH, P.J., and POWELL, J., concur.
[1] Count one of the amended indictment, filed on October 27, 2006, alleged that appellant engaged in a pattern of corrupt activity in his employment by or association with a drug trafficking enterprise and participating in two or more predicate acts of corrupt activity, including: (1) conspiring to engage in money laundering in violation of R.C. 1315.55 regarding the use of $240,000 in drug trafficking proceeds; (2) conspiring to engage in the aggravated murder of Jeff Thomas in violation of R.C. 2903.01; (3) conspiring to engage in the murder of Bill Slayton in violation of R.C. 2903.02; (4) conspiring to engage in money laundering in violation of R.C. 1315.55 in the payment for the murder-for-hire of Jeff Thomas; and (5) conspiring to engage in the murder of Schawn Little in violation of R.C. 2903.02. *Page 1