[Cite as *State v. Bybee*, 2017-Ohio-8869.]

# Court of Appeals of Ohio

EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
**No. 105165**

## STATE OF OHIO

PLAINTIFF-APPELLEE

vs.

## DEJUAN BYBEE

DEFENDANT-APPELLANT

**JUDGMENT:**
AFFIRMED

Criminal Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CR-16-602798-A

**BEFORE:** Blackmon, J., McCormack, P.J., and Stewart, J.

**RELEASED AND JOURNALIZED:** December 7, 2017

**ATTORNEY FOR APPELLANT**

Brian McGraw
55 Public Square, Suite 2100
Cleveland, Ohio 44113

**ATTORNEYS FOR APPELLEE**

Michael C. O'Malley
Cuyahoga County Prosecutor

By:    Carl J. Mazzone
Assistant County Prosecutor
The Justice Center, 9th Floor
1200 Ontario Street
Cleveland, Ohio 44113

PATRICIA ANN BLACKMON, J.:

{¶1}   Plaintiff-appellant, DeJuan Bybee ("Bybee"), appeals from his convictions for aggravated robbery, robbery, and other offenses.   He assigns the following errors for our review:

I.   Bybee's convictions were not supported by sufficient evidence.

II.   Bybee's convictions were against the manifest weight of the evidence.

{¶2} Having reviewed the record and pertinent law, we affirm the decision of the trial court.   The apposite facts follow.

{¶3}   Bybee and codefendant, Gary Hall ("Hall"), were indicted in a 16-count indictment in connection with the armed robberies of two men outside of a bar in Cleveland Heights.   As is relevant herein, Counts 1 and 2 charged Bybee with aggravated robbery, with one-year and three-year firearm specifications.   Counts 3 through 6 charged him with robbery, with one-year and three-year firearm specifications. Counts 7 and 8 charged him with kidnaping  with one-year and three-year firearm specifications.   Counts 9 and 10 charged him with theft, with one-year and three-year firearm specifications.   Count 13 charged him with carrying a concealed weapon, Count 14 charged him with improperly handling firearms in an automobile, and Count 15 charged him with having a weapon while under disability.   All of the counts also set forth a forfeiture specification for a firearm.

**{¶4}** Bybee waived his right to a jury trial, and the matter against him proceeded to a bench trial on September 4, 2016.[1]

**{¶5}** The testimony of victims Joseph Walker ("Walker") and Rameal Eaddy ("Eaddy") established that after completing their shifts at work, around 11:45 p.m., on January 15, 2016, Walker drove them to Winners Bar in Cleveland Heights. They next went to Helen's Game Time where they stayed until approximately 2:00 a.m. when the bar closed. As they walked back to Walker's car, two men who had been in a dark sedan parked nearby, approached Walker and Eaddy.

**{¶6}** Walker was accosted by a man in a white hooded sweatshirt, who patted him down, and took the keys to his Hyundai Sonata, bank card, and several dollars from his pockets. Walker testified that the man was not armed, and said "Don't move too much, you're making me nervous." Walker did not get a good look at the man, or his accomplice, and he made no identifications in this matter.

**{¶7}** Eaddy was accosted by a man in a gray hooded sweatshirt. Eaddy testified that this assailant put a gun to his chest and demanded that Eaddy give him everything he had. The assailant, identified as Hall, took Eaddy's bank card, wallet, keys, and phone, after the other man in the white hooded sweatshirt patted him down. The man with the gun then entered the passenger side of the dark sedan, and the man with the white sweatshirt entered the driver's side, and drove off.

---

[1]Hall pled guilty to aggravated robbery with a three-year firearm specification, robbery, carrying a concealed weapon, and having a weapon while under disability. The remaining charges were dismissed. Hall was sentenced to prison for six years.

**{¶8}** Walker and Eaddy went back inside the bar and called Cleveland Heights Police at 2:18 a.m. Cleveland Heights police officers responded within minutes. Eaddy informed police that his iPhone was equipped with "Find My iPhone," which could determine the device's location. Officer Brian Ondercin ("Officer Ondercin") began tracking the iPhone around 2:27 a.m. He determined that the phone was at the intersection of Euclid and Strathmore Avenues in East Cleveland, and was moving westbound toward Eddy Road. Officer Ondercin advised other units to be on the lookout for a black sedan in this area. Officer Ondercin later reported that the iPhone was at the intersection of Eddy Road at Euclid Avenue, heading northward.

**{¶9}** After approximately fifteen minutes of tracking, Cleveland Heights Police Officer Robert Sheid ("Officer Sheid") spotted a black BMW sedan with two occupants on Eddy Road at Euclid Avenue. Officer Sheid began following this car, the only car in the area. At approximately 2:45 a.m., Officer Sheid stopped the vehicle and waited for assistance. At 2:50 a.m., the officers used Find My iPhone to verify that Eaddy's phone was inside the stopped car. Bybee, the driver of the car, was patted down. He did not have a gun or other items from the robberies on his person. Hall, who had been seated in the passenger seat, had Eaddy's iPhone. Other items, including the keys to both of the victims' cars, were in plain view inside the car.

**{¶10}** The police obtained a search warrant for the car. A loaded semiautomatic handgun was recovered from an orange and black backpack on the floor of the passenger side. Eaddy's wallet, cigarettes, and lighter were also recovered from the BMW.

{¶11} The officers brought Walker and Eaddy to the scene of the stop for a "cold stand." Both men indicated that the black BMW was the vehicle driven by the assailants. Eaddy identified Hall as the man with the gun who robbed him. However, neither man was able to identify Bybee as the other assailant. Additionally, Eaddy learned that his credit card had been used for an online $200 purchase at Best Buy. Officer Lewis Alvis ("Officer Alvis") testified that he recovered both sets of keys stolen from the victims.

{¶12} DNA analysis of the stolen keys recovered from inside the BMW contained a mixture of major and minor components. The major contributor was an unknown male and was determined not to be Bybee. The minor contributor was inconclusive due to insufficient information. DNA swabs from the magazine of the weapon were also inconclusive, and DNA analysis of the gun and money had an insufficient amount of DNA to complete testing.

{¶13} Bybee agreed to be interviewed by police. Bybee told Cleveland Heights Police Detective Brett Billi ("Det. Billi") that earlier in the day, he had been with his girlfriend and was driving a silver Blazer SUV. The black BMW sedan was owned by his brother, Dwayne. Title evidence demonstrated, however, that the BMW was owned by Todd Onley, who apprised police that Hall had rented it from him. Bybee stated that he borrowed the black BMW from Dwayne then loaned it to Hall. Bybee got a call from Hall at approximately 2:00 a.m., regarding meeting and returning the BMW to Dwayne.

**{¶14}** Bybee also told police that at the time of his arrest he had planned to go to Euclid and Strathmore to meet his girlfriend.   He later changed his mind and was en route to the area of East 55th Street to take Hall home when he was stopped by the police.  Bybee acknowledged that the backpack in which the gun was found belongs to his girlfriend.

**{¶15}**   Det. Billi informed Bybee that he intended to obtain a search warrant for his cell phone data to determine his location at the time of the robbery.   At that point, Bybee told Det. Billi that he had stopped at Madison Avenue, a South Euclid bar located approximately 3/4 mile away from Helen's Game Time.

**{¶16}** Det. Billi spoke with Bybee's girlfriend in order to corroborate Bybee's statement, but she did not verify Bybee's statement.   Det. Billi also determined that Hall's phone number was stored in Bybee's phone under the name "Gutta."   Review of the call logs revealed several calls between this number  and  Bybee  between  11:47  p.m.  on  January  15,  and  1:17  a.m.  on January 16, 2016.  Bybee also sent text messages to his girlfriend at 1:37 a.m. indicating that he and "Gutta," i.e., Hall, were at the Sunny Spot lounge on Noble Road, approximately ten minutes north of Helen's Game Time.   Det. Billi   obtained video surveillance footage from Helen's Game Time that depicted a dark BMW backing into a parking spot near where Walker had been parked.

**{¶17}** The court subsequently convicted Bybee of all counts and specifications except having a weapon while under disability.   The court merged the robbery

convictions, and the firearm specifications of Counts 1 and 2, and the firearm specifications on the remaining offenses. Bybee was sentenced to a total of nine years of imprisonment.

## Sufficiency of the Evidence

{¶18} In his first assigned error, Bybee argues that the evidence is insufficient to support his conviction for armed robbery and other offenses because neither victim identified him, and the state's DNA evidence does not show that he handled the victims' property.

{¶19} The question of whether the evidence is legally sufficient to sustain a verdict is a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386, 1997-Ohio-52, 678 N.E.2d 541. It is "an inquiry about due process, * * * the resolution of which does not allow the court to weigh the evidence." *State v. Martin,* 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983). In a sufficiency inquiry, an appellate court does not assess whether the state's evidence is to be believed but whether, if believed, the evidence admitted at trial supported the conviction. *State v. Starks*, 8th Dist. Cuyahoga No. 91682, 2009-Ohio-3375, ¶ 25, citing *Thompkins* at 387. "The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, 818 N.E.2d 229, ¶ 77; *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

**{¶20}** The key question in this case is the identity of Hall's codefendant who robbed Walker and assisted with the aggravated robbery of Eaddy. In this regard, we note that generally, there is no requirement that a witness must make an in-court identification of a defendant in criminal cases. *State v. Collins*, 8th Dist. Cuyahoga No. 98350, 2013-Ohio-488, ¶ 19, citing *State v. Scott*, 3 Ohio App.2d 239, 244, 210 N.E.2d 289 (11th Dist.1965); *State v. Muhammad*, 8th Dist. Cuyahoga No. 104111, 2016-Ohio-8322, ¶ 23. Rather, circumstantial evidence may be sufficient to establish the identity of the accused. *Collins* at ¶ 1; *In re A.W.,* 8th Dist. Cuyahoga No. 103269, 2016-Ohio-7297; *see also State v. McKnight*, 107 Ohio St.3d 101, 2005-Ohio-6046, 837 N.E.2d 315, ¶ 75; *State v. Kiley*, 8th Dist. Cuyahoga Nos. 86726 and 86727, 2006-Ohio-2469, ¶ 10; *Cleveland v. Williams*, 8th Dist. Cuyahoga No. 101588, 2015-Ohio-1739, ¶ 25.

**{¶21}** In this matter, Bybee complains that Walker and Eaddy testified that they were "one hundred percent sure" that Bybee was not the assailant. However, Walker and Eaddy both testified that they did not see the man's face, and Walker testified that during Officer Lewis's questioning, he was not the person who said "a hundred percent, no." Instead, according to Walker, this was part of the police officer's question to him. Our review of the record indicates that the witnesses simply stated that they could not make an identification; they did not exonerate Bybee.

**{¶22}** Further, both victims identified Hall as the person with the gun, and the state's evidence demonstrated that Bybee and Walker were together shortly before and

after the robbery. During his police interview, Bybee also admitted that at around the time of the robbery, he was involved in loaning the BMW to Hall. Later, when Bybee was made aware of cell phone information demonstrating his location at around the time of the robbery, Bybee added that he was at Madison Avenue, another bar about three quarters of a mile away from Helen's Game Time at this time. Approximately 27 minutes after the robbery, the car was being tracked as it traveled westbound. When it was stopped approximately 15 minutes later, it was being driven by Bybee. Walker's keys and Eaddy's keys and wallet were inside the car, and Bybee's girlfriend owned the bag in which the gun was found.

{¶23} Therefore, after viewing the evidence in a light most favorable to the prosecution, despite the lack of DNA and identification testimony, we conclude that a rational trier of fact could have found the essential elements of the crimes proven beyond a reasonable doubt. *See State v. Emanuel*, 10th Dist. Franklin No. 96APA01-59, 1996 Ohio App. LEXIS 4054 (Sept. 19, 1996) (felonious assault conviction affirmed where defendant was one of occupants of vehicle linked to offense a "relatively short time" later; but robbery conviction reversed where defendant was one of the occupants of a vehicle linked to this offense three hours later). *Accord Kiley*, 2006-Ohio-2469; *Collins,* 2013-Ohio-488. The circumstantial evidence was sufficient in this case.

{¶24} This assigned error is without merit.

### Manifest Weight of the Evidence

**{¶25}** Bybee next argues that his convictions are against the manifest weight of the evidence.

**{¶26}** In *Thompkins*, the court explained a challenge to the manifest weight of the evidence as follows:

> Weight of the evidence concerns "the inclination of the *greater amount of credible evidence*, offered in a trial, to support one side of the issue rather than the other. It indicates clearly to the jury that the party having the burden of proof will be entitled to their verdict, if, on weighing the evidence in their minds, they shall find the *greater amount of credible evidence* sustains the issue which is to be established before them. Weight is not a question of mathematics, but depends on its *effect in inducing belief*." (Emphasis added.) *Black's* [*Law Dictionary* (6th Ed.1990) 1594].
>
> When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "'thirteenth juror'" and disagrees with the factfinder's resolution of the conflicting testimony. [Quoting *Tibbs v. Florida*, 457 U.S. 31, 45, 102 S. Ct. 2211, 2220, 72 L.Ed.2d 652 (1982)]. *See also State v. Martin* (1983), 20 Ohio App.3d 172, 175, * * *, 485 N.E.2d 717, 720-721 ("The court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created

such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.").

*Id.*, 78 Ohio St.3d at 386.

{¶27} In this matter, the state presented evidence that both Walker and Eaddy identified Hall as the assailant with the gun and the state presented text evidence that Bybee and Walker were together shortly before and right after the robbery. Bybee loaned the BMW to Hall, and admitted that he was within a short distance of Helen's Game Time. When the BMW was stopped a short time after the robbery, it was being driven by Bybee. Walker's keys and Eaddy's keys and wallet were inside the car.

{¶28} Reviewing the entire record, weighing the evidence and all reasonable inferences, considering the credibility of witnesses and resolving conflicts in the evidence, we cannot say that the trial court clearly lost its way and created a manifest miscarriage of justice in determining that Bybee was one of Walker's and Eaddy's assailants. Bybee's convictions for aggravated robbery, robbery, kidnaping, and other offenses in connection with this matter are not against the manifest weight of the evidence. *Accord Muhammad*, 2016-Ohio-8322 at ¶ 23.

{¶29} The second assigned error is without merit.

{¶30} Judgment affirmed.

It is ordered that appellee recover of appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's conviction having been affirmed, any bail pending appeal is terminated.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____

PATRICIA ANN BLACKMON, JUDGE

TIM McCORMACK, P.J., and
MELODY J. STEWART, J., CONCUR