[Cite as *State v. Valladares*, 2018-Ohio-1250.]

IN THE COURT OF APPEALS OF OHIO
THIRD APPELLATE DISTRICT
ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                    CASE NO.  1-17-49

    v.

RAYMOND A. VALLADARES,             O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Lima Municipal Court
Trial Court No. 17CRB00858

Judgment Affirmed

Date of Decision:   April 2, 2018

APPEARANCES:

    *Thomas J. Lucente, Jr.* for Appellant

    *John R. Payne* for Appellee

**SHAW, J.**

{¶1} Defendant-appellant, Raymond A. Valladares, appeals the October 2, 2017 judgment of the Lima Municipal Court journalizing his conviction for domestic violence by the trial court, and sentencing him to 180 days in jail, with 119 days suspended upon his compliance with certain conditions, and assessing a $250.00 fine, plus court costs.

{¶2} On April 4, 2017, two complaints were filed against Valladares alleging that he committed the offenses of domestic violence, in violation of R.C. 2919.25(A), a misdemeanor of the first degree, and assault, in violation of R.C. 2903.13(A), a misdemeanor of the first degree. The charges arose from allegations of an altercation involving Valladares and his mother at the home where he resided with his mother. Valladares appeared for arraignment and entered pleas of not guilty to the charges.

{¶3} On April 27, 2017, Valladares appeared in court with counsel for a pre-trial where he waived his right to a speedy trial and elected to proceed with a trial to the court.

{¶4} On July 21, 2017, a bench trial was held, without objection by Valladares. The same day, a journal entry issued by the Presiding and Administrative Judge of the municipal court announced the appointment of that court's magistrate as "Acting Judge" for the courtroom where the case was assigned

to be heard. Thus, the magistrate presided as the "Acting Judge" over the trial. After hearing the evidence presented, the "Acting Judge" found Valladares guilty on both counts.

{¶5} On September 19, 2017, Valladares appeared for sentencing before the elected municipal court judge assigned to that courtroom. The trial court found the offenses to be allied and of similar import. The State chose to proceed to sentencing on the domestic violence offense. The trial court imposed a $250.00 fine and 180 days in jail, with 119 suspended upon Valladares compliance with the terms of his two-year period of community control sanctions. (*See* Doc. No. 12).

{¶6} Valladares filed this appeal, asserting the following assignments of error.

## ASSIGNMENT OF ERROR NO. 1

**APPELLANT'S CONVICTION FOR DOMESTIC VIOLENCE AND ASSAULT WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND IS CONTRARY TO LAW.**

## ASSIGNMENT OF ERROR NO. 2

**THE TRIAL COURT ERRED IN DENYING APPELLANT'S MOTION FOR ACQUITTAL AT THE CLOSE OF THE STATE'S CASE IN CHIEF, WHERE THERE WAS LEGALLY INSUFFICIENT EVIDENCE TO ESTABLISH EACH MATERIAL ELEMENT OF THE OFFENSE BEYOND A REASONABLE DOUBT.**

## ASSIGNMENT OF ERROR NO. 3

**ACTING JUDGE RICHARD K. WARREN LACKED AUTHORITY TO PRESIDE OVER THE TRIAL IN THESE**

**PROCEEDINGS FOR LACK OF OHIO SUPREME COURT APPOINTMENT TO THE CASE.**

**ASSIGNMENT OF ERROR NO. 4**

**DEFENDANT WAS DENIED THE EFFECTIVE ASSISTANCE OF COUNSEL AS REQUIRED BY THE SIXTH AMENDMENT TO THE U.S. CONSTITUTION**.

{¶7} For ease of discussion, we elect to address the assignments of error out of order.

*Third Assignment of Error*

{¶8} In his third assignment of error, Valladares claims that the appointment of the magistrate, who is over the age of seventy and a retired judge, as "Acting Judge" by the municipal court's Presiding Judge was "illegal" and therefore invalidates his convictions. Specifically, Valladares contends that the Presiding Judge lacked the authority to make the appointment because (1) only the Chief Justice of the Supreme Court of Ohio is authorized to appoint a retired judge over the age of seventy, and (2) a currently-employed magistrate cannot be appointed as "Acting Judge."

{¶9} The record reflects that a journal entry signed by the Presiding and Administrative Judge was issued on July 21, 2017 and stated the following:

> **It is the order of the Court that Magistrate Richard K. Warren is hereby appointed Acting Judge for Courtroom Number One of the Lima Municipal Court on Friday July 21, 2017 for the purpose of handling the afternoon docket for Judge David A. Rodabaugh. The Magistrate shall receive no additional**

-4-

**compensation for this appointment.  He shall not act on any matters for which he ruled initially as Magistrate.**

(Doc. No. 7 at 3).

{¶10} At the outset, we note that the record of the trial court proceedings does not reflect any motion, oral or written, made on Valladares' behalf questioning the authority of the Presiding Judge to make the appointment, or objecting to the propriety of the "Acting Judge" hearing the case.  We concur with other appellate districts which have held that the decision by a party to proceed without challenge or objection concerning the appointment of the judge, in this instance the "Acting Judge," renders any possible error waived.  *See e.g.*, *Williams v. Banner Buick, Inc.*, 12 Dist. Butler No. CA89-03-041, 60 Ohio App.3d. 128, 134; *In re J.L., H.L., T.M., T.M.,* 8th Dist. Cuyahoga Nos. 85668, 85669, 85670, 2005-Ohio-6125, ¶ 42; *Fegen v. Davet*, 6th Dist. Huron No. H-02-012, 2002-Ohio-4473, ¶ 11 (stating that "Appellant did not make an objection as to the qualification of the judge during the proceedings, and as such any objections to an irregularity in the judge's appointment have been waived").

{¶11} Nevertheless, even assuming *arguendo* that Valladares preserved the issue for appeal, "the acting judge, by having 'colorable' authority, is deemed a *de facto* judge with all the power and authority of a proper *de jure* judge. Consequently, actions taken by [the Acting Judge] are legally valid and binding." *Williams*, 60 Ohio App.3d. at 134.  Moreover, the record in this case reveals that the

Presiding Judge complied with the authority granted to her in R.C. 1901.121, and properly made the appointment within the parameters set forth in the statute. *See* R.C. 1901.121(B)(1)(which delineates the requirements for an appointment of an "Acting Judge" by the Presiding Judge of a municipal court consisting of two judges when a temporary vacancy occurs in the office of a judge).

{¶12} Contrary to Valladares' contention on appeal, a limitation on the appointment premised upon age or the position of magistrate is not present in the statute. Rather, it is apparent that Valladares attempts to confuse the issue by conflating the age limit set forth in Art. IV, § 6 of the Ohio Constitution for a person elected or appointed to judicial office by restrictively applying *that* limitation to the *temporary* appointment of a qualified person to the office of a municipal judge under R.C. 1901.121(B) in the event of an interim vacancy. Additionally, Valladares fails to cite to any authority which construes an age limitation on the authority granted in R.C. 1901.121(B) in this manner.

{¶13} With regard to the second challenge raised by Valladares to the appointment of the "Acting Judge," the record clearly indicates that the magistrate was to receive no additional compensation nor was he permitted to act on any matters for which he initially ruled upon as magistrate, thereby alleviating the concerns of potential dual compensation and conflicts of interest raised by Valladares in his brief. *See Lakewood v. Suleymanov,* 160 Ohio Misc.2d 94, 2010-

Ohio-5963 (specifically disavowing a similar argument relying upon claims of this nature which were not substantiated in the record). Moreover, to accept Valladares' positon and place such limitations on the Presiding Judge's authority to make an appointment of an "Acting Judge" under R.C. 1901.121(B) would not only obstruct the efficiency of effectively filling the temporary void in the judicial office, but would also impede the seamless operation of the court, both objectives which the statute clearly intends to achieve.

{¶14} In sum, we conclude that Valladares waived the issue by failing to challenge the appointment of the "Acting Judge" during the trial court proceedings. Further, even if Valladares had objected, he has failed to demonstrate any error in the procedure that the Presiding Judge employed in appointing the "Acting Judge," and has further failed to point to any relevant authority which supports his assertion that the appointment of the "Acting Judge" in this instance was "illegal," or otherwise improper. Accordingly, we overrule the third assignment of error.

*First and Second Assignments of Error*

{¶15} In his first and second assignments of error, Valladares challenges the sufficiency and the weight of the evidence supporting his convictions for domestic violence and assault.

*Standard of Review*

**{¶16}** When reviewing the sufficiency of the evidence underlying a criminal conviction, an appellate court examines the evidence to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. *See State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. The "relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.*

**{¶17}** The Supreme Court of Ohio has "carefully distinguished the terms 'sufficiency' and 'weight' in criminal cases, declaring that 'manifest weight' and 'legal sufficiency' are 'both quantitatively and qualitatively different.' " *Eastley v. Volkman*, 132 Ohio St.3d 328, 2012-Ohio-2179, ¶ 10, quoting *State v. Thompkins*, 78 Ohio St.3d 380 (1997), paragraph two of the syllabus. Unlike our review of the sufficiency of the evidence, an appellate court's function when reviewing the weight of the evidence is to determine whether the greater amount of credible evidence supports the verdict. *State v. Plott*, 3d Dist. Seneca Nos. 13-15-39, 13-15-40, 2017-Ohio-38, ¶ 73, citing *Thompkins*, *supra*, at 387.

**{¶18}** In reviewing whether the trial court's judgment was against the weight of the evidence, the appellate court sits as a "thirteenth juror" and examines the conflicting testimony. *Thompkins*, 78 Ohio St.3d at 387. In doing so, this Court

must review the entire record, weigh the evidence and all of the reasonable inferences, consider the credibility of witnesses, and determine whether in resolving conflicts in the evidence, the factfinder "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Id.*

*Relevant Law*

**{¶19}** The trial court found Valladares guilty of domestic violence, in violation of R.C. 2919.25(A), which provides, "no person shall knowingly cause or attempt to cause physical harm to a family or household member." The trial court also found Valladares guilty of assault, in violation of R.C. 2903.13(A), which states that "no person shall knowingly cause or attempt to cause physical harm to another." "Physical harm," as defined by R.C. 2901.01(A)(3), "means any injury, illness, or other physiological impairment, regardless of its gravity or duration."

**{¶20}** There is no dispute that victim in this case, Peggy, is Valladares' mother and was a household member at the time of the offense. The question before the trial court was whether Valladares "*knowingly* caus[ed] or attempt[ed] to cause" Peggy "any injury * * * regardless of its gravity or duration." R.C. 2919.25(A); R.C. 2903.13(A); 2901.01(A)(3) (emphasis added). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C.

2901.22(B). When determining whether a defendant acted knowingly, his state of mind must be determined from the totality of the circumstances surrounding the alleged crime. *State v. Ingram,* 10th Dist. Franklin No. 11AP-1124, 2012-Ohio-4075, ¶ 22. Culpable mental states are frequently demonstrated through circumstantial evidence. *Id.*

*Analysis*

**{¶21}** At trial, the prosecution presented an excerpt from the 911 call Peggy, who was clearly exasperated and out of breath, made on April 3, 2017, in which she stated the following:

> **Operator: Caller, talk to Lima. Hello? It's Lima Police Department.**
>
> **Peggy: Yes, I had the cops here earlier. My son just busted the uh my whole top of my range. He, he took the—he's tried to hit me and I took a pan and I, I threw it at him and then he just destroyed my range. Threw food everywhere. Took his feet stomping on my pots and pans here. There's glass everywhere.**
>
> **Operator: Is he still there?**
>
> **Peggy: He's drunk, yeah. Then he starts to throw me out the door.**
>
> **Operator: Ok. Where is Raymond at now?**
>
> **Peggy: He's in the house somewhere.**
>
> **Operator: Ok, where—**
>
> **Peggy:—the living room.**

Case No. 1-17-49

> **Operator:—are you at?  He's in the living room?  Where are you at, Peggy?**
>
> **Peggy:  Yeah.  I can't—[Speaking to another person] Get me shoes so I can get out of here.**
>
> **Operator:  Peggy, are, are you going to be waiting outside of your residence?  To speak with officers?**
>
> **Peggy:  What?**
>
> **Operator:  [phone ringing] Hold on real quick.**

(Exhibit A).

{¶22} The prosecution also presented the testimony of Patrolman Crish, the responding officer.  Officer Crish testified that upon his arrival, Peggy appeared "very upset, distraught, and in fear for herself."  (Doc. No. 15 at 16).  He recalled that the kitchen was "destroyed" and the glass stove top was shattered.  (Doc. No. 15 at 13).  He learned that during the altercation Valladares had grabbed Peggy by the arm and "shoved her down the stairs attempting to push her out of the residence."  (Doc. No. 15 at 17).  Officer Crish identified "Exhibit B" as a written statement that he observed Peggy complete and sign on the date of the incident, which states:

> **My son started slamming doors again and oven door and top of oven.  I begged him to stop then he grabbed my arm when I reached out to stop him and pushed me back.  Then I took pan and struck him with it.  He then took fists [sic] and broke top of stove and then grabbed me and pushed me down 3 steps and slammed door on me to lock me out.  I called cops.**

(Exhibit B).

{¶23} Officer Crish testified that he observed a red mark on Peggy's arm where Valladares had grabbed her.

{¶24} Peggy also testified for the prosecution, but was declared a hostile witness by the trial court after she provided a contradictory account of the events, stated that she lied in her written statement, and expressed that she did not want her son to be prosecuted. Peggy admitted that Valladares grabbed her arm. However, she explained that she had first struck Valladares with a cookie sheet and that he grabbed her arm while trying to take the cookie sheet away from her. She also admitted that Valladares pulled her arm "backwards down on the step" causing her to "hit the wall," but maintained that it was an accident and not intentional. (Doc. No. 15 at 11).

{¶25} Valladares testified on his own behalf echoing Peggy's testimony on the stand that she hit him with the cookie sheet first, and then chased him around the kitchen. He claimed that his actions were defensive and that he was not the aggressor. He also admitted to hitting the stove top, but thought it was a "normal stove" that would not break so easily. (Doc. No. 15 at 23). The trial court asked Valladares to explain the manner in which his medically infirm, sixty-year-old mother, who apparently used a walker while in the courtroom, "chased" him around the kitchen. Valladares responded that "it wasn't moving that fast" and "she doesn't always need a walker." (Doc. No. 15 at 28). Valladares also denied shoving Peggy

down the steps and instead claimed that he was attempting to exit the home and "she got in the way." (Doc. No. 15 at 23).

{¶26} In light of the evidence presented at trial, we find that the trial court did not err by finding Valladares guilty of domestic violence and assault. Even though Peggy presented testimony at trial, which conflicted with her recorded statements made at the time of the incident, it was within the province of the trial court as the finder of fact to assess the credibility of the witnesses, to resolve the inconsistencies in the evidence, and to reach a determination on the ultimate issue of fact. Moreover, in view of Peggy's emotionally charged statements in the 911 call, in which she informed law enforcement that Valladares attempted to hit her and shoved her down the stairs, which were also consistent with her written statement given at the time of the incident, and Officer Crish's testimony, which corroborated the existence of her "distraught" mental state and being in fear for herself when the altercation occurred, along with the red mark observed by Officer Crish on Peggy's arm, and the severity of the damage done to the kitchen, the trial court could have reasonably concluded that Valladares knowingly caused or attempted to cause physical harm to his mother, Peggy.

{¶27} Accordingly, we find that there was sufficient evidence presented by the prosecution to sustain the trial court's findings that Valladares was guilty of both domestic violence and assault, and we further find that the trial court's verdict was

supported by the weight of the evidence.   Valladares' first and second assignments of error are overruled.

*Fourth Assignment of Error*

**{¶28}** In his fourth assignment of error, Valladares claims that he received ineffective assistance of trial counsel because counsel failed: (1) to request a jury trial; (2) to call Peggy's grandson, who was present at the home during the incident with Valladares, as a witness; and (3) to object to the appointment of the magistrate as the "Acting Judge" hearing the case.

*Standard of Review*

**{¶29}** To establish an ineffective assistance of counsel claim, Valladares must show that his trial counsel's performance was deficient and that counsel's performance prejudiced him. *State v. Jackson*, 107 Ohio St.3d 53, 2005-Ohio-5981, ¶ 133, citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The failure to make either showing defeats a claim of ineffective assistance of counsel. *State v. Bradley*, 42 Ohio St.3d 136, 143 (1989), quoting *Strickland* at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

*Analysis*

**{¶30}** At the outset, we note that we have already addressed the merits of Valladares' claim regarding the propriety of the appointment of the "Acting Judge." Having dispensed with that argument for the reasons discussed in analyzing the third assignment of error, we do not find it to be a valid basis for Valladares to establish an ineffective assistance of counsel claim.

**{¶31}** We also do not find trial counsel's decision not to call Peggy's grandson to constitute deficient performance. In general, even "debatable trial tactics do not establish ineffective assistance of counsel." *State v. Leonard*, 104 Ohio St.3d 54, 2004-Ohio-6235, ¶ 146. "[A]n attorney's selection of witnesses to call at trial falls within the purview of trial tactics and generally will not constitute ineffective of counsel." *State v. Yarbrough*, 3d Dist. Shelby No. 17-2000-10, 2001-Ohio-2351, *7. Here, Valladares fails to demonstrate that his trial counsel's decision not to call Peggy's grandson as a witness was anything other than sound trial strategy. Moreover, Peggy's testimony at trial indicates that her grandson only observed Valladares hit the stove top, but he did not witness the interaction between Peggy and Valladares, further suggesting that Valladares suffered no prejudice as a result of trial counsel's decision not to call Peggy's grandson.

**{¶32}** Finally, Valladares claims his trial counsel was ineffective for not requesting a jury trial. Crim.R. 23 states "[i]n petty offense cases, where there is a

right of jury trial, the defendant shall be tried by the court unless he demands a jury trial. Such demand must be in writing and filed with the clerk of court not less than ten days prior to the date set for trial, or on or before the third day following receipt of notice of the date set for trial, whichever is later. Failure to demand a jury trial as provided in this subdivision is a complete waiver of the right thereto."

{¶33} In the instant case, a pre-trial journal entry filed approximately three weeks after the complaint indicates a trial to the court was the defense's selected course of action. (Doc. No. 6). Moreover, the record is silent as to whether Valladares voiced his desire for a jury trial to his attorney as he now contends on appeal. Nevertheless, Valladares has presented no evidence that he was prejudiced by the occurrence of a bench trial rather than a jury trial, or that the bench trial yielded an unreliable result. Accordingly, we do not find that the record suggests the jury waiver to be anything other than trial counsel's strategic choice to proceed with the case. Therefore, the fourth assignment of error is overruled.

{¶34} For all these reasons, the assignments of error are overruled and the judgment of the trial court is affirmed.

*Judgment Affirmed*

**WILLAMOWSKI, P.J. and ZIMMERMAN, J., concur.**

**/jlr**

Case No. 1-17-49