[Cite as *State v. Henderson*, 2018-Ohio-4550.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,             CASE NO. 1-18-30

     v.

JENNIFER A. HENDERSON,         O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Lima Municipal Court
Trial Court No. 18CRB00344

**Judgment Affirmed**

Date of Decision:   November 13, 2018

APPEARANCES:

    *Carroll R. Creighton* **for Appellant**

    *Anthony M. DiPietro* **for Appellee**

**PRESTON, J.**

{¶1} Defendant-appellant, Jennifer A. Henderson ("Henderson"), appeals the May 14, 2018 judgment entry of conviction and sentence of the Lima Municipal Court. For the reasons that follow, we affirm.

{¶2} This case arises from a December 16, 2017 incident in which Henderson allegedly struck Brooke Jamison ("Jamison") twice in the face at a restaurant in Lima, Ohio. (May 8, 2018 Tr. at 8-14). (*See* Doc. No. 2). On February 8, 2018, a complaint was filed in the Lima Municipal Court charging Henderson with assault in violation of R.C. 2903.13(A), a first-degree misdemeanor. (Doc. No. 3). On February 26, 2018, Henderson appeared for arraignment and entered a plea of not guilty. (Doc. No. 6).

{¶3} Following a bench trial on May 8, 2018, the trial court found Henderson guilty of assault. (Doc. No. 11). The trial court fined Henderson $500 and sentenced her to 30 days in jail with 20 days suspended on condition that she have no contact with Jamison for two years and that she commit no similar offenses for two years. (*Id.*). The remaining 10 days in jail were suspended on the condition that Henderson complete 30 hours of community service prior to August 8, 2018. (*Id.*). (*See* Doc. No. 12). On May 14, 2018, the trial court filed its judgment entry of conviction and sentence. (Doc. No. 11).

{¶4} Henderson filed her notice of appeal on June 1, 2018. (Doc. No. 13). She raises one assignment of error.

**Assignment of Error**

**Jennifer Henderson's conviction should be overturned because it is against the manifest weight of the evidence.**

{¶5} In her assignment of error, Henderson argues that her assault conviction is against the manifest weight of the evidence. Specifically, Henderson argues that the trial court clearly lost its way in concluding that she assaulted Jamison because Jamison testified that she had not met Henderson prior to the night of the alleged incident, Jamison identified Henderson based on a single photo, rather than a lineup, Henderson had five witnesses testify that "they did not see [Henderson] strike [Jamison] or even approach her," and the trial court stated that "there was no evidence of anyone else striking the victim, despite all of [Henderson's] witnesses testifying that [she] did not strike [Jamison]." (Appellant's Brief at 7).

{¶6} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A

reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

{¶7} Henderson was convicted of assault in violation of R.C. 2903.13(A). R.C. 2903.13(A) provides, in relevant part: "No person shall knowingly cause or attempt to cause physical harm to another * * *." "'Physical harm,' as defined by R.C. 2901.01(A)(3), 'means any injury, illness, or other physiological impairment, regardless of its gravity or duration.'" *State v. Valladares*, 3d Dist. Allen No. 1-17-49, 2018-Ohio-1250, ¶ 19, quoting R.C. 2901.01(A)(3). "A person acts knowingly, regardless of purpose, when the person is aware that the person's conduct will probably cause a certain result or will probably be of a certain nature." R.C. 2901.22 (B). "When determining whether a defendant acted knowingly, his state of mind must be determined from the totality of the circumstances surrounding the alleged crime." *Valladares* at ¶ 20, citing *State v. Ingram*, 10th Dist. Franklin No. 11AP-1124, 2012-Ohio-4075, ¶ 22. Circumstantial evidence is frequently used to establish culpable mental states. *Id.*, citing *Ingram* at ¶ 22.

{¶8} Henderson does not dispute the evidence concerning the underlying elements of the assault offense of which she was convicted; rather, she disputes the issue of identity as to the conviction. *See State v. Missler*, 3d Dist. Hardin No. 6-14-06, 2015-Ohio-1076, ¶ 13. As such, we will address only the identity element of the offense. *Id.*, citing *State v. Carter*, 2d Dist. Montgomery No. 25447, 2013-Ohio-3754, ¶ 9-12. "'It is well settled that in order to support a conviction, the evidence must establish beyond a reasonable doubt the identity of the defendant as the person who actually committed the crime at issue.'" *Id.*, quoting *State v. Johnson*, 7th Dist. Jefferson No. 13 JE 5, 2014-Ohio-1226, ¶ 27, citing *State v. Collins*, 8th Dist. Cuyahoga No. 98350, 2013-Ohio-488, ¶ 19 and *State v. Lawwill*, 12th Dist. Butler No. CA2007-01-014, 2008-Ohio-3592, ¶ 11. "'[D]irect or circumstantial evidence is sufficient to establish the identity of the accused as the person who committed the crime.'" *Collins* at ¶ 19, quoting *Lawwill* at ¶ 11.

{¶9} At trial, the State first offered the testimony of Jamison. (May 8, 2018 Tr. at 8). Jamison testified that she was at Fat Jack's Pizza on Spencerville Road in Lima, Ohio on December 16, 2017 talking with a group of approximately four individuals in the area between the restaurant seating and the bar when Henderson approached her group and asked Jamison for her name. (*Id.* at 8-12). Jamison stated that she responded with her first name and continued her conversation with the other individuals in the group. (*Id.* at 12). She testified that Henderson again interrupted

the group's conversation and asked Jamison for her last name. (*Id.*). Jamison then testified that once she gave Henderson her last name, Henderson said "that's what I thought" and struck her. (*Id.*).

{¶10} Following the first strike, Jamison asked, "What did you do that for?" (*Id.*). Jamison testified that Henderson replied, "That's for my brother, bitch" and struck Jamison a second time. (*Id.*). Jamison stated that Henderson was then escorted out of the building by her husband. (*Id.* at 13). Jamison testified that before and during the physical confrontation, there was approximately two feet between her and Henderson and that Henderson was standing directly in front of Jamison. (*Id.* at 14).

{¶11} Jamison testified that one of her friends identified Henderson shortly after the physical confrontation and informed Jamison that Henderson was the sister of Kevin Jones ("Jones"). (*Id.* at 13). Jones was once married to one of Jamison's best friends and although Jamison and Jones had once been friendly, they no longer spoke because Jamison did not "approve of what [Jones] did to * * * his ex-wife." (*Id.*).

{¶12} The State then introduced State's Exhibit A, a video of the security footage from Fat Jack's Pizza on December 16, 2017. (*Id.* at 15-17). State's Exhibit A depicts Jamison being struck in the face twice by a woman who was immediately escorted away by a man with an irregular gait. (State's Ex. A). Jamison identified

herself and Henderson in the video and also stated that it was Henderson who was depicted striking her. (May 8, 2018 Tr. at 15-17). Jamison testified that she was familiar with Henderson's husband, Joel Henderson ("Joel"), and identified Joel on the security footage as the person escorting Henderson out of the restaurant immediately following the altercation. (*Id.* at 16-18). In addition, Jamison identified Henderson twice in open court as the individual who struck her. (*Id.* at 10-12, 19). On cross-examination, Jamison stated that she did not personally know Henderson and had never seen her before the night of the incident. (*Id.* at 23-24). On re-direct examination, Jamison stated that she initially identified Henderson as "Jennifer Jones," Henderson's maiden name. (*Id.* at 26).

{¶13} Next, Patrolman Justin Halker ("Patrolman Halker"), a patrolman for the City of Lima Police Department, testified that on December 20, 2017, several days after the incident, he went to the restaurant and viewed the security footage from the night of the incident. (*Id.* at 27-28). Patrolman Halker stated that, due to a technical issue with the restaurant's security system, he was unable to get the original video directly from the security system, but was able to obtain a copy of the the video using his camera to record the security footage from the computer screen. (*Id.* at 29). Patrolman Halker viewed State's Exhibit A and testified that it was a fair and accurate representation of the security footage he viewed at the restaurant

on December 20, 2017 and that it had not been changed or altered in any way. (*Id.* at 29-31).

{¶14} Patrolman Halker testified that in addition to viewing and preserving the security video from the restaurant, he continued his investigation by identifying Henderson through her Facebook page and the LEADS database. (*Id.* at 32). Patrolman Halker stated that he printed a BMV photo of Henderson and provided the photo to Jamison, who identified the individual in the photo as the person who struck her. (*Id.* at 32-33). On cross-examination, Patrolman Halker conceded that it may have been better procedure to provide Jamison with a photo lineup, but that a photo lineup was not necessary because he received a separate phone call from Jamison informing him that she knew her assailant and her assailant's current name is "Jennifer Henderson" and not "Jennifer Jones." (*Id.* at 34). Patrolman Halker testified that he attempted to contact Henderson several times via telephone and by visiting the residence listed on her BMV registration and driver's license, but was unsuccessful. (*Id.* at 34-35).

{¶15} Finally, Patrolman Benjamin Kuney ("Patrolman Kuney"), a patrolman for the City of Lima Police Department, testified that he was dispatched to the Fat Jack's Pizza on Spencerville Road in Lima, Ohio on December 16, 2017 to investigate a complaint of assault. (*Id.* at 36-37). He stated that when he arrived at the restaurant, the assailant was gone but he made contact with Jamison and

observed and photographed a bump above her right eye. (*Id.* at 37-38). Patrolman Kuney testified that Jamison identified her assailant as "Jenny Jones." (*Id.* at 38).

**{¶16}** Thereafter, the State moved to admit State's Exhibit A and rested. (*Id.* at 39). State's Exhibit A was admitted without objection. (*Id.*).

**{¶17}** As her first witness, Henderson offered the testimony of Jones, her brother, who testified that he was at the restaurant on December 16, 2017 with a group of 20 to 25 people, including Henderson, following a family funeral. (*Id.* at 39-41). Jones testified that he left the restaurant after Henderson and did not observe an altercation or Henderson being escorted from the bar. (*Id.* at 42-43). Jones testified that he was sitting approximately 25-30 feet from the bar section and would have noticed an altercation taking place. (*Id.* at 44-45). He stated that Henderson did not tell him about any altercation she was involved in but said "[Jamison] was running her mouth about something and that was it and they left." (*Id.* at 45).

**{¶18}** Next, Anthony Streeter ("Streeter") testified that he saw Henderson at the restaurant on December 16, 2017, but he did not observe Henderson in the bar area and did not witness any altercation. (*Id.* at 46-49). On cross-examination, Streeter testified that he has known Henderson and her husband, Joel, for approximately ten years and that Joel walks with a clubfoot. (*Id.* at 49-50).

**{¶19}** Christine Sheffield ("Sheffield"), Jones's girlfriend, testified that she was at the restaurant on December 16, 2017 with a group of people, including

Henderson. (*Id.* at 51). Although she testified that she witnessed Henderson visiting friends in the bar area of the restaurant and that she saw Henderson being escorted out of the establishment by Joel, she denied observing an altercation. (*Id.* at 52-54).

{¶20} Jarrah Cole ("Cole") testified that she was at the restaurant on December 16, 2017 with a group of people, including Henderson. (*Id.* at 54-55). Cole stated that she spoke to Henderson, but denied seeing her involved in an altercation. (*Id.* at 55-56). Cole testified that she observed Henderson speaking with Jamison, but did not know what they were talking about and did not see a physical altercation. (*Id.* at 57-58). Cole described the conversation as "not at all" heated and stated that when she walked past the pair, they were "laughing and talking" and therefore Cole "figured it was just complete benign conversation." (*Id.* at 57-58).

{¶21} Finally, Joel testified that he was at the restaurant on December 16, 2017 "eating and fellowshipping with family," including Henderson. (*Id.* at 60). He denied seeing Henderson involved in an altercation with Jamison and stated that he pulled his wife away from Jamison because Jamison was cussing at Henderson and calling her "the 'B' word." (*Id.*). Joel testified that when asked what happened, Henderson informed him that Jamison spit on her. (*Id.*). Joel denied seeing any physical altercation and specifically denied witnessing Henderson hit Jamison. (*Id.* at 60-61). Joel testified that he and Henderson left the bar following the incident.

(*Id.* at 61). On cross-examination, Joel stated that he has a clubfoot that causes him issues with walking and prevents him from having a straight gait. (*Id.*).

**{¶22}** Thereafter, Henderson rested without offering any exhibits. (*Id.* at 62). The State did not present any additional witnesses on rebuttal. (*Id.*).

**{¶23}** Henderson argues that her conviction is against the manifest weight of the evidence because Jamison testified that she never met Henderson before the night of the incident and because Patrolman Halker showed Jamison a single photo of Henderson, rather than a lineup. (Appellant's Brief at 7). In addition, Henderson argues that she presented five witnesses who testified that "they did not see [Henderson] strike [Jamison] or even approach her" and that the trial court did not "specifically address any credibility issues with [Henderson's] witnesses." (*Id.*). Finally, Henderson argues that the trial court stated in its decision that there was no evidence of anyone other than Henderson striking the victim, despite Henderson calling witnesses who testified that Henderson did not strike Jamison. (*Id.*).

**{¶24}** However, after weighing the evidence and evaluating the credibility of the witnesses, with appropriate deference to the trier of fact's credibility determination, we cannot conclude that the trier of fact clearly lost its way and created a manifest injustice. Thus, we conclude that Henderson's conviction is not against the manifest weight of the evidence as the evidence weighs in favor of a finding that Henderson was the perpetrator of the assault against Jamison.

**{¶25}** First, Henderson's argument that her conviction is against the manifest weight of the evidence because Jamison testified that she had never met Henderson before the night of the incident is without merit. Jamison identified Henderson twice in open court and affirmed to the trial court that she had no doubt that Henderson was her assailant. (May 8, 2018 Tr. at 11, 19). Jamison testified that Henderson was standing directly in front of her and approximately two feet away from her immediately before the physical altercation. (*Id.* at 14). Moreover, Jamison and Henderson conversed prior to and following the physical altercation. (*Id.* at 10-12). As such, Jamison had a clear view of her assailant and was in the best position to identify Henderson as her attacker. Therefore, the fact that Jamison met Henderson for the first time on the night of the incident does not weigh against Henderson's conviction. *See State v. Prater*, 71 Ohio App.3d 78, 85 (10th Dist.1990) (holding that Prater's conviction was not against the weight of the evidence where the victim did not know Prater and therefore had "no reason or motive to lie" and gave a "positive and firm" identification of Prater at trial).

**{¶26}** Henderson's assertion that her conviction is against the manifest weight of the evidence because Patrolman Halker showed Jamison a single photo, rather than a photo lineup, is likewise unpersuasive. "[T]here is no general requirement that the defendant must be identified in photo lineups." *State v. Miller*, 11th Dist. Lake No. 2011-L-111, 2012-Ohio-3515, ¶ 53. Rather, "'direct or

circumstantial evidence is sufficient to establish the identity of the accused as the person who committed the crime.'" *Id.*, quoting *Lawwill*, 2008-Ohio-3592, at ¶ 11, citing *State v. Irby*, 7th Dist. Mahoning No. 03 MA 54, 2004-Ohio-5929, ¶ 16-21. Although Patrolman Halker stated on cross-examination that it "possibly could have" been better procedure to prepare a photo lineup, he also testified that he believed that a photo lineup "was not necessary" because he received a separate telephone call from Jamison identifying her attacker as "Jennifer Henderson" and stating that she knew [of] her. (May 8, 2018 Tr. at 33-34). The additional information received from Jamison, which corroborated Patrolman Halker's own investigation into Henderson's social media accounts and known associates, led Patrolman Halker to testify on cross-examination that he "100% believe[s] [he] had the correct person." (*Id.* at 33-34). Moreover, as discussed above, Jamison also identified her assailant twice in open court. (*Id.* at 11, 19). As such, the use of the single photo in lieu of a photo lineup does not weigh against Henderson's conviction. *See State v. Brown*, 7th Dist. Mahoning No. 16 MA 0059, 2017-Ohio-7704, ¶ 8, 30-31 (rejecting Brown's argument that his conviction was against the manifest weight of the evidence where a victim who identified Brown as the perpetrator identified Brown from a single photo, rather than a photo lineup, and was familiar with Brown).

**{¶27}** Moreover, the fact that Henderson presented five witnesses who testified that "they did not see [Henderson] strike [Jamison] or even approach her" and that the trial court did not "specifically address any credibility issues with [Henderson's] witnesses" does not mean that Henderson's conviction is against the manifest weight of the evidence. Likewise, the fact that the trial court stated in its decision that there was no evidence of anyone other than Henderson striking the victim, despite Henderson calling witnesses who testified that Henderson did not strike Jamison, does not make Henderson's conviction against the manifest weight of the evidence. While Henderson called five witnesses who stated that they did not see her strike Jamison, this fact does not make Henderson's conviction against the manifest weight of the evidence. By all accounts, the restaurant was busy on the night of the incident, each of Henderson's witnesses were at the establishment with a large group of people following a funeral event, and none of Henderson's witnesses were with her for the whole evening. (May 8, 2018 Tr. at 9, 41-42, 46-47, 51-52, 55, 59-60). Therefore, Henderson's five witnesses were only a small sample of the individuals who were present at the restaurant at the time of the incident.

**{¶28}** Moreover, of Henderson's witnesses, two were asked if they saw *any* physical confrontation at the restaurant on December 16, 2017, and both denied observing any confrontation, whether involving Henderson or not. (*Id.* at 42, 48).

-14-

Yet, State's Exhibit A clearly shows that a physical confrontation occurred. (*See* State's Ex. A). In fact, two of the five witnesses admitted seeing Henderson and Jamison talking and interacting. (May 8, 2018 Tr. at 56-58, 60-61).

**{¶29}** Furthermore, "the weight to be given the evidence and the credibility of the witnesses are primarily for the trier of the facts." *DeHass*, 10 Ohio St.2d 230 at paragraph one of the syllabus. "'When examining witness credibility, "the choice between credible witnesses and their conflicting testimony rests solely with the finder of fact and an appellate court may not substitute its own judgment for that of the finder of fact."'" *State v. White*, 3d Dist. Seneca No. 13-16-21, 2017-Ohio-1488, ¶ 50, quoting *In re N.Z.*, 11th Dist. Lake Nos. 2010-L-023, 2010-L-035, and 2010-L-041, 2011-Ohio-6845, ¶ 79, quoting *State v. Awan*, 22 Ohio St.3d 120, 123 (1986). "'A fact finder is free to believe all, some, or none of the testimony of each witness appearing before it.'" *Id.*, quoting *In re N.Z.* at ¶ 79, citing *State v. Thomas*, 11th Dist. Lake No. 2004-L-176, 2005-Ohio-6570, ¶ 29. *See also Missler*, 2015-Ohio-1076, at ¶ 44, quoting *State v. Daley*, 3d Dist. Seneca No. 13-13-26, 2014-Ohio-2128, ¶ 68, quoting *State v. Antill*, 176 Ohio St. 61, 67 (1964). "A verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's witnesses rather than the defendant's version of the events." *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16, citing *State v. Andrews*, 9th Dist. Summit No. 25114, 2010-Ohio-6126, ¶ 28. As such, the

trial court was able to assign whatever credibility it deemed appropriate to the witnesses presented. Therefore, the fact that Henderson called five witnesses who all testified that they did not see a physical confrontation between Henderson and Jamison does not make the verdict against the weight of the evidence, even when the trial court does not "specifically address any credibility issues with [Henderson's] witnesses."

{¶30} Therefore, having weighed the evidence and all reasonable inferences, and considering the credibility of the witnesses, we conclude that the trial court did not clearly lose its way and create such a manifest miscarriage of justice that Henderson's conviction must be reversed. As the weight of the evidence supports the finding that Henderson is the individual who assaulted Jamison, Henderson's conviction is not against the manifest weight of the evidence.

{¶31} Accordingly, Henderson's assignment of error is overruled.

{¶32} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**ZIMMERMAN and SHAW, J.J., concur.**

**/jlr**