[Cite as *State v. Jeffers*, 2025-Ohio-1388.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
ROSS COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | Case No. 22CA36 |
| Plaintiff-Appellee, | : | |
| | : | |
| v. | : | **DECISION AND JUDGMENT ENTRY** |
| | : | |
| JOSHUA L. JEFFERS, | : | |
| | : | **RELEASED: 04/15/2025** |
| Defendant-Appellant. | : | |

APPEARANCES:

Kimberly E. Burroughs, Assistant State Public Defender, Columbus, Ohio, for appellant.

Jeffrey C. Marks, Ross County Prosecuting Attorney, Chillicothe, Ohio, for appellee.

Wilkin, J.

**{¶1}** This is an appeal from a Ross County Court of Common Pleas judgment entry of conviction in which a jury found appellant, Joshua L. Jeffers, ("Jeffers") guilty of Failure to Comply with an Order or Signal of a Police Officer, a third-degree felony, in violation of R.C. 2921.331. The trial court imposed a prison term of 24 months, suspended Jeffers' driver's license for 10 years, and advised Jeffers that he is subject to a discretionary post-release control of up to 2 years.

**{¶2}** Jeffers presents one assignment of error challenging the jury's determination that he was the driver of the black Ford F-150 as being against the manifest weight of the evidence. We disagree, finding that the jury was in the best position to assess the credibility of the State's witnesses and that both

Trooper Boetcher and Sergeant Brown, experienced law enforcement officers, identified Jeffers as the driver.  We, therefore, overrule Jeffers's sole assignment of error and affirm the trial court's judgment of conviction.

FACTS AND PROCEDURAL BACKGROUND

**{¶3}** On July 1, 2022, a Ross County Grand Jury indicted Jeffers for Failure to Comply with an Order or Signal of a Police Officer, a third-degree felony, in violation of R.C. 2921.331.  The case proceeded to a jury trial on September 7, 2022.  During the trial, the State called two witnesses from the Ohio State Highway Patrol:  Trooper Tyler Boetcher and Sergeant Bobby Brown.

**{¶4}** Trooper Boetcher was the first to testify.  He has been employed with the Ohio State Highway Patrol as a "road trooper" for approximately eight years.  On May 25, 2022, Trooper Boetcher started his shift at 10:00 pm and he was accompanied by his direct supervisor, Sergeant Brown.  Trooper Boetcher was driving the patrol vehicle and Sergeant Brown was in the passenger seat.  While patrolling southbound on State Route 41 in Ross County, Trooper Boetcher observed a stationary pickup truck facing southbound in the northbound lane with no lights on.  As Trooper Boetcher approached the vehicle, it "takes off –if traffic would have been coming, it would have been head-on in traffic at first before it gets on its side of the roadway."  Trooper Boetcher began following the vehicle and identified it as a 2002 Black Ford F-150 (F-150).  "The vehicle accelerated at a high rate of speed, well above the posted speed limit of fifty-five miles [an] hour.  The vehicle was traveling left of center three or four times. The vehicle made a left turn onto Free Lane without signaling."

{¶5} When Jeffers turned left onto Free Lane, Trooper Boetcher "activated [his] overhead emergency lights to initiate a traffic stop[,]" but the vehicle accelerated leading to a pursuit. The pursuit involved dangerous driving by the suspect, including turning off the lights and driving at high speeds. At one point, Jeffers slowed down and the officers thought he was going to stop but he turned his vehicle around and began driving towards the patrol car. While this was occurring, Trooper Boetcher turned on his spotlight and pointed it directly into Jeffers' window, allowing him to look straight at the driver. Additionally, as Jeffers drove past the patrol car, the overhead lights on the patrol car also lit up the area allowing Trooper Boetcher to get a good look at the driver as he was passing. Trooper Boetcher was able to describe the driver and he relayed these characteristics over the radio. Trooper Boetcher also was able to read the license plate number of the F-150, which he radioed in for the registration information.

{¶6} Trooper Boetcher testified that after Jeffers turned around, he started traveling northwest on Upper Twin Road. The officers continued to follow Jeffers for "approximately two more minutes before –the pursuant got very dangerous. Again driving without lights on at high rates of speed [until Trooper Boetcher] terminated the pursuit." After searching for approximately 30 to 35 minutes for the vehicle, the officers located the abandoned vehicle with a matching registration "just off Upper Twin Road."

{¶7} The registration for the vehicle was in the name of Joseph Jeffers with an address located at 9494 Upper Twin Road. The officers were also able

to obtain a colored photograph of the registered owner. When Trooper Boetcher saw the photograph of Joseph Jeffers, he indicated that it was not the person he saw driving the vehicle that night. On cross examination, Trooper Boetcher indicated that the photo of the registered owner resembled the person he saw driving the vehicle but ultimately, he made the determination that he was not the suspect.

{¶8} In furtherance of their investigation, Trooper Boetcher testified that he and Sergeant Brown went to the registered owners address on Upper Twin Road. At this address, they found that Jeffers' mother resided in the "front house" and Jeffers "lived at the same address, just a different building on the same property." The officers further learned that Jeffers was the brother of Joseph Jeffers, the registered owner of the vehicle. Thereafter the officers were able to view a photograph of Jeffers. After viewing Jeffers photograph, Boetcher stated he was "absolutely one hundred percent sure" that Jeffers was the driver of the F-150.

{¶9} Next to testify was Sergeant Brown, who has been employed at the Ohio State Highway Patrol for 12 years. As a sergeant, he handles supervisory issues. Part of his supervisor duties includes riding along with other troopers. On May 25, 2022, Sergeant Brown was riding along with Trooper Boetcher when they engaged in the pursuit with Jeffers. Sergeant Brown, like Trooper Boetcher, testified about Jeffers' erratic driving including his traveling at high speeds, turning his vehicle lights off and on, failing to stop at stop signs, and traveling left of center.

{¶10} Pertinent to this appeal, however, is Sergeant Brown's testimony regarding his identification of Jeffers as the driver of the vehicle that evening. Sergeant Brown indicated that when Jeffers turned around during the pursuit and came back toward the patrol car, "Trooper Boetcher takes his spot light and makes sure it's shining into the front of the pickup truck[.]" Sergeant Brown testified that he was focused on the driver so that he can get a good description. Sergeant Brown indicated that the dash camera caught approximately two seconds of the driver as the vehicle was coming towards them and once the vehicle passed the camera, Sergeant stated that both he and Brown "probably got another two second look" at the driver. Therefore, Sergeant Brown estimated that he probably had a "good three or four second look of the driver of that vehicle." Sergeant Brown confirmed that the perception from the cruiser camera differs from what is seen in person, noting the difficulty in seeing facial expressions and license plates on video.

{¶11} Thereafter, the license plate of the vehicle was radioed into dispatch and the registered owner came back to Joseph Jeffers. The officers also received a photograph of the registered owner, Joseph Jeffers. Sergeant Brown stated that the registered owner's photograph did not match the description of the person he saw driving the vehicle, but they were "very similar. It was just different." Later that evening, a BMV photograph of Jeffers was obtained. Once Sergeant Brown looked at Jeffers' photo, he automatically said "yes, that's him." Further, when asked how sure he was that Jeffers was the person he saw driving the vehicle that evening, Sergeant Brown said he was "one hundred percent after

looking at the BMV image."  Sergeant Brown also testified that he has used BMV images to identify drivers and passengers in investigations multiple times.

{¶12} The State then rested and the defense presented no witnesses or evidence.

{¶13} After being instructed on the law by the judge, the jury retired to deliberate.  The jury found Jeffers guilty on the sole count of Failure to Comply with an Order of Signal of a Police Officer, and the trial court sentenced him that same day to 24 months in prison and suspended his driver's license for 10 years. The trial court further informed Jeffers that he was subject to a discretionary post-release control of up to two years.

{¶14} It is from this judgment of conviction, that Jeffers now appeals

### ASSIGNMENT OF ERROR

THE JURY'S DETERMINATION THAT MR. JEFFERS WAS THE DRIVER OF THE BLACK FORD F-150 WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

{¶15} In Jeffers first assignment of error he argues that the jury "clearly lots its way when it accepted Trooper Boetcher's and Sergeant Brown's testimony identifying Jeffers as the driver of the black pickup truck with 'one hundred percent' certainty."  Jeffers contends that the officers' identification was influenced by a "single photo rather than a 'best practice' photo array pursuant to R.C. 2933.83, and there was no additional direct or circumstantial evidence to support the identification."  Jeffers argues that the officers "had, at most, a four second glimpse of the driver during an active, high-speed chase in the middle of the night[,]" which is insufficient for a reliable identification.  Additionally, Jeffers

maintains that Sergeant Brown's identification of Jeffers was unduly influenced by Trooper Boetcher, as Sergeant Brown expressed his belief about the photo match before Trooper Boetcher viewed it. Jeffers also claims there were discrepancies between the officers' trial testimony and the cruiser video which further undermines the reliability of their identification. Finally, Jeffers argues that the jury failed to consider the possibility that the truck, which was spray painted black, might have been stolen, suggesting Jeffers was not the driver. Therefore, Jeffers argues that the jury's verdict was against the manifest weight of the evidence.

{¶16} The State responds by first emphasizing the credibility of the two law enforcement officers, Trooper Boetcher and Sergeant Brown, who identified Jeffers as the driver. Second, the State relies on the video evidence (Exhibit 1) that "corroborates the amount of time the troopers estimated they saw the driver, in this case at a very close vantage point (while driving right by the driver's side of the car)," which is estimated as "approximately six seconds." Third the State indicates that in addition to the direct eyewitness testimony, there is circumstantial evidence linking Jeffers to the vehicle i.e., the F-150 was registered to Jeffers' brother, who lived at the same address as Jeffers.

{17} The State responds to Jeffers' argument that that the officers' identification of Jeffers was based on "a sole BMV photo as opposed to the use of a photo lineup, by indicating that photo lineups are given to lay people by law enforcement, not the procedures used by highway patrol troopers, … to identify suspects. Veteran officers have special training in identifying suspects."

Therefore, the State contends that the jury did not lose its way in identifying Jeffers as the driver, and the verdict is supported by the manifest weight of the evidence.

### A. Standard of Review

{¶18} In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed. *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), citing *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist. 1983). "Judgments supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence." *C.E. Morris Co. v. Foley Const. Co.*, 54 Ohio St.2d 279 (1978), syllabus.

{¶19} The weight and credibility of evidence are to be determined by the trier of fact. *State v. Kirkland*, 2014-Ohio-1966, ¶ 132. The trier of fact "is free to believe all, part or none of the testimony of any witness," and we "defer to the trier of fact on these evidentiary weight and credibility issues because it is in the best position to gauge the witnesses' demeanor, gestures, and voice inflections, and to use these observations to weigh their credibility." *State v. Dillard*, 2014-Ohio-4974, ¶ 28 (4th Dist.), citing *State v. West*, 2014-Ohio-1941, ¶ 23 (4th Dist.).

**{¶20}** In addition, "[a] verdict is not against the manifest weight of the evidence because the finder of fact chose to believe the State's witnesses." *State v. Chancey*, 2015-Ohio-5585, ¶ 36 (4th Dist.), citing *State v. Wilson*, 2014-Ohio-3182, ¶ 24 (9th Dist.), citing *State v. Martinez*, 2013-Ohio-3189, ¶ 16 (9th Dist.).  Moreover, " '[w]hile the jury may take note of inconsistencies and resolve or discount them accordingly, * * * such inconsistences (sic.) do not render defendant's conviction against the manifest weight or sufficiency of the evidence.' " *State v. Corson*, 2015-Ohio-5332, ¶ 31 (4th Dist.), quoting *State v. Proby*, 2015-Ohio-3364, ¶ 42 (10th Dist.), citing *State v. Gullick*, 2014-Ohio-1642, ¶ 10 (10th Dist.).

### B. Analysis

**{¶21}** Jeffers was convicted of failure to comply with an order or signal of a police officer in violation of R.C. 2921.331 (B), which states:  "No person shall operate a motor vehicle so as willfully to elude or flee a police officer after receiving a visible or audible signal from a police officer to bring the person's motor vehicle to a stop."

**{¶22}** It is well settled that in addition to proof of each element of an offense, the State must also demonstrate the identity of the defendant as the perpetrator beyond a reasonable doubt.  *State v. Marcum,* 2004-Ohio-3036, ¶ 22 (7th Dist.), citing *State v. Cook*, 65 Ohio St.3d 516, 526 (1992).  " 'The degree of a witness's certainty goes to weight to be given to his testimony, which is a matter for the trier of fact to determine, and not to its sufficiency as a matter of

law in establishing the prosecution's prima facie case.' " *State v. Gray*, 2010-Ohio-2530, ¶ 7, quoting *State v. Capanna*, No. 14104 (9th Dist. 1989).

{¶23} Jeffers does not argue that the offense of failure to comply with an order or signal of a police officer did not occur but rather argues that the jury's determination that he was the driver of the Ford F-150 truck was against the manifest weight of the evidence. Therefore, our analysis will be limited to the identity of the driver of the F-150 Truck.

{¶24} Trooper Boetcher and Sergeant Brown, both experienced veterans of the Ohio State Highway Patrol, provided credible and reliable testimony identifying Jeffers as the driver of the F-150.

{¶25} Trooper Boetcher has been employed with the Ohio State Highway Patrol for approximately eight years. In the matter at hand, Trooper Boetcher used his spotlight to illuminate the driver's window, allowing him to see the driver. He also indicated that his overhead patrol car lights lit up the area well and allowed him to obtain a good view of the driver. He described the driver and relayed those characteristics over the radio. Trooper Boetcher further indicated that it was common for him to look into other vehicles while he is driving, which is a divided attention skill a patrol unit must have, like looking in a vehicle to see if a person is wearing their seatbelt.

{26} After the pursuit, Trooper Boetcher first reviewed the photograph of Joseph Jeffers, the registered owner of the F-150, and he determined that it was not the person he saw driving that evening. Subsequently after learning that Jeffers resided on Upper Twin Road and was the brother of the registered owner,

Trooper Boetcher then reviewed a BMV photograph of Jeffers and stated that he was "absolutely one hundred percent sure" that Jeffers was the driver.

{¶27} Sergeant Brown has been with the OSHP for approximately 12 years. He testified that he has used BMV images to identify suspects in investigations multiple times. He was riding with Trooper Boetcher during the pursuit and he was focused on the driver when the F-150 turned around and drove directly toward the patrol vehicle. While Trooper Boetcher shined the spotlight directly into the driver's side window, Sergeant Brown was able to get a good look at the driver. He testified that he "had a good three or four second look of the driver[.]" Sergeant Brown first looked at the registered owner's BMV photograph and he indicated that it was not the person he saw driving, although "very similar." When he saw the BMV photograph of Jeffers he "automatically" said "yes, that's him." Additionally, when Sergeant Brown was asked how sure he was that Jeffers was the driver on May 25, 2022, he said "one hundred percent after looking at the BMV image."

{¶28} Jeffers argues that the officers' identification of Jeffers as the driver using a single photo rather than a "best practice" photo array pursuant to R.C. 2933.83 is not sufficient to sustain a manifest weight of the evidence challenge unless there is some "additional 'direct or circumstantial evidence sufficient to establish the identity of the accused as the person who committed the crime.' " [appellant brief page 5, quoting *State v. Henderson*, 2018-Ohio-4550, ¶ 26 (3rd Dist.).]

**{¶29}** We disagree.  As Sergeant Brown testified, he had access to BMV images, he saw the saw the image of Jeffers, he saw the suspect driving the vehicle, and he knew with 100% certainty that the image of Jeffers was the person driving the truck; therefore; "there was no point to do a lineup."  *See State v. Henderson,* 2018-Ohio-4550, ¶ 26 (Finding that there is no general requirement that a photo lineup be used to identify a defendant but rather direct or circumstantial evidence is sufficient.)  He further indicated that he does photo lineups for "an eyewitness that's a civilian[,]" not law enforcement and that "there has been plenty of times that I've seen a BMV image and I'm like that's the person."

**{¶30}** Additionally, we find that circumstantial evidence further links Jeffers to the F-150 being driven during the pursuit on May 25, 2022.  The F-150 was registered to Joseph Jeffers, who is Jeffers' brother.  Further, the pursuit ended on Upper Twin Road, which is where the abandoned vehicle was found, and this is where both the registered owner's address was located and where Jeffers resided as well.  This connection provides a compelling link between Jeffers and the F-150 being driven that evening and further supports the officers' identification of Jeffers and the jury's conclusion.

**{¶31}** After our review of the entire record, weighing the evidence and all reasonable inferences, considering the credibility of witnesses, and resolving conflicts in the evidence, we do not find that the jury clearly lost its way in determining that Jeffers was the driver of the Ford F-150.  There is no manifest

miscarriage of justice that reversal of the conviction is necessary.  Accordingly,

we overrule Jeffers' sole assignment of error

CONCLUSION

{¶32} Having overruled Jeffers' sole assignment of error, we affirm the trial

court's judgment entry convicting Jeffers of failure to comply with an order or

signal of a police officer.

**JUDGMENT AFFIRMED.**

**JUDGMENT ENTRY**

It is ordered that the JUDGMENT IS AFFIRMED and appellant shall pay the costs.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Ross County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed 60 days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the 60-day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the 45-day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of 60 days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Smith, P.J. and Abele, J.:  Concur in Judgment and Opinion.

For the Court,


BY: _____
Kristy S. Wilkin, Judge


**NOTICE TO COUNSEL**
**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**